## ARNOLD v. COLLINS.

(Court of Appeals of District of Columbia. Submitted April 8, 1926. Decided May 3, 1926. Motion for Rehearing Denied May 29, 1926.)

No. 4398.

Appeal and error ⬳1050(1)—In action for libel, admission of evidence affecting truth of charge that plaintiff was a negro, if erroneous, held not prejudicial, in view of other evidence.

In action for libel, involving truth of charge that plaintiff was a negro, admission in evidence of two indictments, more than 50 years old, found against plaintiff's mother and father, charging them with offense of fornication, and reciting that plaintiff's mother was "a person of color," if erroneous, held not ground for reversal, in view of other evidence.

Appeal from the Supreme Court of the District of Columbia.

Action by James E. Arnold against Ross A. Collins. Judgment for defendant, and plaintiff appeals. Affirmed.

W. E. Richardson and W. M. Bastian, both of Washington, D. C., for appellant.

J. S. Barbour, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment for the defendant upon the verdict of a jury in the Supreme Court of the District of Columbia, in an action for libel.

In his declaration plaintiff, appellant here, alleged that the defendant, appellee here, had caused to be published that the plaintiff was "a son of Martha Arnold, a Virginia negress," owned originally by Alexander Scott, and afterwards by Washington Arnold; that defendant had further caused to be published that plaintiff "is one of the most cunning and unscrupulous exploiters of ignorant Indians; * * * that Arnold [plaintiff] has induced ignorant and unsuspecting Indians to adopt him as their heir, especially those that owned or inherited oil lands; * * * his conduct has been so reprehensible that he has been twice disbarred before the department at Washington. * * * Arnold was regarded in Oklahoma, not only as a crook, but he and the rest of his family were also regarded as negroes."

The pleas put in issue the fact of the publications and the truth of the charges therein. At the trial, the fact of publication was established by the plaintiff, and evidence introduced tending to show that Martha Ar-

nold, plaintiff's mother, was an Indian girl. His sister, Sarah Skaggs, testified that she was the daughter of Martha and James Arnold, who "were married at some time and place which she could not name, and lived together on Pearl river in Mississippi, and that her mother spoke Choctaw, and never lived in Coweta county, Ga., at all."

The defendant testified that prior to the publications he examined the records of the Interior Department at Washington, D. C., and at Philadelphia, Mississippi, concerning the activities of the plaintiff, "ostensibly in the interest of Choctaw Indians." Without objection, witness stated that these records "showed the plaintiff to be the natural son of James Arnold, a wealthy white planter, long resident in Coweta county, Ga., and a certain woman called Martha Arnold, who for many years prior to the Civil War, and from the time she was 15 or 16 years of age until the year 1872, lived in Coweta county, Ga., the greater portion of the time on the plantation of said James Arnold."

Evidence then was introduced tending to show that this Martha Arnold was a Virginia negress, who was sold as a slave to Washington Arnold, a planter of Coweta county, Ga., and subsequently purchased by his brother, James Arnold, who continued to own her until she was emancipated. Over the objection and exception of the plaintiff, there then were introduced in evidence two indictments, returned in the circuit court of Coweta county, Ga., at the September term, 1869. In one of these indictments James Arnold was charged with the offense of fornication "with one Martha Arnold, a person of color, the said Martha Arnold being then and there a single woman," and in the other indictment "Martha Arnold, a person of color," was charged with the same offense. Each indictment was signed by 23 grand jurors and the Solicitor General.

The defendant then introduced evidence tending to show that, as a result of these indictments, James Arnold and plaintiff's mother, with several illegitimate children, including the plaintiff, removed to Arkansas, where, after the death of James Arnold, Martha made application to have herself and her children enrolled as Mississippi Choctaws on the tribal rolls of the Chickasaw Nation; that in the records of the Interior Department bearing upon this application the foregoing indictments appeared, together with the previous history of Martha Arnold already detailed, that James Arnold, in addition to the illegitimate children of Martha

Arnold, was the father of a large number of legitimate white children, whose mother was dead; that "his living with Martha Arnold was the cause of public scandal and comment, and various witnesses who had known Martha Arnold and her children in Georgia, Arkansas, and Oklahoma had testified that in each place they had been regarded as negroes and referred to as such"; that Martha Arnold had mentioned the indictments as one of the causes of their removal from Coweta county, Ga.; that James Arnold died in Arkansas in 1876, leaving a will bearing date of May 11, 1870, and executed in Georgia, where he then resided. This will was recorded in Arkansas and subsequently offered for probate in Georgia (both in the lifetime of Martha Arnold), by one of the children of Martha; the plaintiff herein being represented by his next friend. The will contained the following:

"Third. I formerly owned as a slave woman by the name of Martha; she is now free and known by the name of Martha Arnold—she has now living the following mulatto children which bear my name and that are my children, each of whom I recognize as my children, to wit: Frank Arnold, Woodson Arnold, Jones Arnold, Martha Catherine Arnold, Elbert Arnold [the plaintiff], and Park Arnold. * * *

"Seventh. All of my white legitimate children have heretofore received from me what I deemed a sufficiency of my property for their comfort and prosperity, * * * it being my main object to provide for the support and education of the six children of Martha Arnold, the children mentioned in the third item of this will, which six children I recognize as my children and feel it to be my duty to make the provision for them which I make by this will * * *"

There was no objection to the introduction of this will in evidence. One of the witnesses who signed it was Milton A. Candler, a Georgia attorney, who testified in the probate proceeding in that state in part as follows: "A day or two before the execution of the annexed will, James Arnold came to the law office of Hill & Candler, in the city of Atlanta, to consult witness, as an attorney, as to the manner of securing the property conveyed by this paper to the persons named therein, who, he said, were his children by a negro woman."

Litigation concerning this will reached the Supreme Court of Georgia, and the opinion of that court (Arnold et al. v. Arnold et al., 62 Ga. 627) is made a part of the record here by stipulation. The court there said: "Martha Arnold and her children, with the exception of Frank J. Arnold, filed their bill against Hugh M. Arnold, said Frank, and others, making, in substance, the following case: On May 11, 1870, in the county of Fulton, James Arnold, then a resident and citizen of Georgia, executed a will bequeathing all his property * * * to a trustee in trust for the use of complainants and the said Frank; the estate to the children being one in fee simple, and that to the mother being a right to maintenance and support on certain conditions. Martha was formerly testator's slave, and the other complainants and said Frank were children which she bore to him."

It having appeared that the United States Commission to the Five Civilized Tribes had rejected the application of Martha Arnold to have herself and children enrolled as Mississippi Choctaws, and that the decision was reviewed by Judge Springer, of the United States Court for the Central District of Indian Territory, his opinion purporting to reverse the decision appealed from was introduced in evidence. The Supreme Court of the United States, in a test case, subsequently determined that the court of Indian Territory was without jurisdiction to pass upon any of the questions considered in Judge Springer's opinion. An examination of that opinion and the record before the commission fails to disclose that either the court or the commission had any knowledge of the will of James Arnold or of the proceedings thereunder.

The only exception brought forward in this appeal relates to the introduction in evidence of the two indictments. It is not seriously disputed, and indeed could not be under the evidence, that plaintiff was the illegitimate son of James and Martha Arnold. The evidence overwhelmingly establishes that James and Martha Arnold knew of these indictments prior to removing from the state of Georgia, and that the attitude of the public in their then home county of Coweta in that state, culminating in the indictments, was a factor in such removal. The fact, therefore, of the illicit relationship forming the basis of the indictments, was conclusively established by other evidence. This narrows the issue to the question whether the mere recital in the indictments that Martha Arnold was "a person of color" so prejudiced the plaintiff before the jury as to warrant a reversal of the judgment, assuming that the indictments were erroneously received in evidence.

On the part of the defendant, it is con-

tended that, inasmuch as these indictments were more than 50 years old when admitted in evidence, and were signed by 24 representative men of a rural community, where social life was stable and fixed, the term "a person of color," being one of identification merely, was admissible as neighborhood reputation. But we do not deem it necessary to determine this question, for in our view the evidence so overwhelmingly established the fact that Martha Arnold was "a person of color" as to preclude the possibility of a different verdict by the jury. It is unnecessary to analyze that evidence, already set out in substance, except to suggest that the will of James Arnold, with its solemn recitals that the testator formerly owned Martha Arnold "as a slave woman," and that "she has now living the following mulatto children," including the plaintiff, and the finding of the Supreme Court of Georgia that "Martha was formerly testator's slave," rendered the allusion in these indictments merely cumulative.

It results that the judgment is affirmed, with costs.

Affirmed.