**RUNKLE et al. v. UNITED STATES.**

No. 241.

Circuit Court of Appeals, Tenth Circuit.

July 28, 1930.

S. R. Owens and Lowell D. Hunt, both of Denver, Colo., for appellants.

Ralph L. Carr, U. S. Atty., of Antonito, Colo., John G. Reid, Asst. U. S. Atty., of Hugo, Colo., William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, and James T. Brady, Atty. U. S. Veterans' Bureau, both of Washington, D. C., and Richard A. Toomey, Atty. U. S. Veterans' Bureau, of Denver, Colo., for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The plaintiff sued upon a war risk insurance policy issued to Louis Runkle, and in which she was the beneficiary. She alleged that the insured died on March 20, 1923, and that the policy had matured on November 30,

3, by reason of the fact that from that e until his death he was totally and permanently disabled. His administratrix, made defendant at the instance of the United ates, prayed for the installments due at the te of his death; the plaintiff for those due ereafter.

The answer of the government alleged at the policy had expired in October, 1918, d denies that it had matured by reason of e permanent and total disability of the inured prior to its expiration.

At the trial, the only matter in controversy was whether the insured was totally and permanently disabled prior to November 30, 1918, the end of the grace period afforded by the policy.

At the conclusion of the plaintiff's evidence, the court directed a verdict for the defendant. Such direction, and rulings excluding certain evidence offered by the plaintiff, are assigned as error.

Upon the trial, the plaintiff testified that when she first met the deceased in October, 1919, he was suffering with tuberculosis and confined in a sanitarium; that he remained in that sanitarium until July, 1922, when he was sent to the Fitzsimons General Hospital, where he was confined until his death in March, 1923; that the deceased never worked after she met him. Dr. Ruoff, a government doctor, testified that he had specialized in pulmonary tuberculosis since May, 1914; that he examined the deceased on May 5, 1921; that at that time he was "suffering from tuberculosis of the lungs in a far advanced stage with complications"; that there was a fibroid consolidation of the right lung; a fibroid infiltration of the entire left lung, with a large excavation in the upper lobe; that, at the time of his examination, he was totally disabled. The written report of Dr. Ruoff's examination was admitted in evidence which disclosed an active, chronic, pulmonary tuberculosis with many complications, and in an advanced stage. Dr. Troute, a specialist in tuberculosis, testified as an expert; he had never seen the insured, but, from the written report of the examination of Dr. Ruoff, he testified that in his opinion the insured must have been suffering from tuberculosis in November, 1918; that tuberculosis was a progressive disease; that there are gradations of the disease, from very fast to very slow.

■ 1. In this state of the record, the trial court directed a verdict for the defendant, for the reason that there was no evidence

from which a jury could find that the insured was permanently and totally disabled in November, 1918. There is evidence, from Dr. Troute, that the insured was afflicted with tuberculosis in November, 1918. There is in addition a statutory presumption to the same effect. 43 Stat. 616, 38 USCA § 471; Brandaw v. United States (9 C. C. A.) 35 F.(2d) 181. The question is, however, Was there evidence from which a jury might find that he was permanently and totally disabled in November, 1918? Upon this question there was no direct evidence. Whether a person, with the medical history of the insured in this case, was physically incapable of following continuously any substantially gainful occupation in 1918, is primarily a medical question. It will be unnecessary to decide whether a jury, without expert assistance, should have been permitted to decide this question, for the reason that the opinion of an expert upon the question was offered and excluded.

■ 2. Dr. Troute was given the history of the case as disclosed by the evidence, and was asked whether in his opinion the deceased was able to carry on a substantially gainful occupation from November, 1918, until the date of his death. An objection was sustained to the question. In this we think there was error. The reason for the rule which permits experts to express an opinion upon the ultimate question, and the authorities in support thereof, are exhaustively treated in United States Smelting Co. v. Parry (8 C. C. A.) 166 F. 407, 411. The opinion is by Judge, now Justice, Van Devanter. In that opinion, the court held that the rule which prohibits a nonexpert witness from testifying as to his opinions or conclusions "never was intended to close any reasonable avenue to the truth in the investigation of questions of fact"; that the most important qualification of the general rule is the one which permits a witness possessed of special training or experience "to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness."

Applying that rule to this case, we are of the opinion that the evidence should have been admitted. Whether tuberculosis is a progressive or a nonprogressive disease is a medical question; whether a particular case discloses a history of rapid or slow progress is a medical question. The evidence here disclosed a patient with tuberculosis in 1918;

that he was bedfast in October, 1919; an advanced stage of cavitation in 1921 with complications; and death in 1923. Whether such a person was necessarily incapable of following a substantially gainful occupation in 1918 is a question upon which experts can render assistance to a jury. No rule can be laid down applicable to all cases. The nature of the disease, and the time element, are both involved. Undoubtedly there are diseases where no honest opinion as to their past duration can be formed from a present examination; there are others where a definite opinion can be. But whether such an opinion can or cannot be formed is in itself a question for experts. In the case at bar we are of the opinion that there was error in excluding the evidence offered.

3. The plaintiff offered in evidence a statement purporting to be signed by one Dr. Maguire, and purporting to be an examination of the insured made on December 4, 1919. That report discloses an active pulmonary tuberculosis; an inability to perform any part of any occupation; concludes that his chances for recovery or arrest are remote. The report recommends a rating for compensation of "Temporary Total." The report was found in the files of the attorney for the United States Veterans' Bureau for the state of Colorado. To this proffer of proof the defendant objected on the ground that the evidence was incompetent and immaterial; that the document had not been identified; and that it was hearsay.

The identification was not sufficient, and the report was properly excluded. Since the case is to go back for another trial, we pass upon the other objections. If the report is properly identified as having been made by a doctor employed by the United States government, and that it is his report of a physical examination made of the insured, it is not incompetent. The World War Veterans' Act 1924 (38 USCA § 456) provides that:

"All files, records, reports, and other papers and documents pertaining to any claim for the benefits of the provisions of this chapter, whether pending or adjudicated, shall be deemed confidential and privileged and no disclosure thereof shall be made except as follows:

"(a) To a claimant or his duly authorized representative, as to matters concerning himself alone, when in the judgment of the director such disclosure would not be injurious to the physical or mental health of the claimant;

"(b) Where required by the process a United States court to be produced in suit or proceeding therein pending; or wh such production is deemed by the director be necessary in any suit or proceedi brought under the provisions of this cha ter * * *."

This statute contemplates that those claim ing the benefits of the Act may have access such reports. Such access would be of litt avail to the claimants if the reports could n be used in court. Moreover, the statute con templates use in court by subjecting them t the process of the United States court. Fur thermore, the generous attitude of the government toward the beneficiaries of the Veterans' Act repels any idea of a desire to conceal any material fact from the veterans or their beneficiaries. Particularly is this true of findings of a physical examination. The standing of the doctors employed by the government is assurance of the integrity of their reports. In Gonzalez v. United States, 298 F. 1003, the district court required the government to produce for the examination of the plaintiff, in a war risk insurance case, such reports and records. In Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306, the Supreme Court held that the records of meteorological stations were admissible in evidence, such reports being of a public character, and made in pursuance of public duty. To the same effect, see McInerney v. United States (1 C. C. A.) 143 F. 729. It is our conclusion that, as far as material to the issues, the report of Dr. Maguire, if properly identified, is admissible.

The report discloses that it was made to the compensation division of the Veterans' Bureau; that is, it was made for the purpose of compensation. Disability under a war risk insurance policy is a different thing than disability under the compensation statutes. Disability under a war risk insurance policy is such "impairment of the mind or body as renders it impossible for the assured to follow continuously any substantially gainful occupation." War risk insurance deals with the individual case, and with "any" occupation. Disability under the compensation statute, on the other hand, deals with "average impairments," and with inability to follow a pre-war occupation. Title 38, USCA, § 477, defines disability ratings for the purposes of compensation as follows: "The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries

in civil occupations similar to the occupation of the injured man at the time of enlistment and not upon the impairment in earning capacity in each individual case, so that there shall be no reduction in the rate of compensation for individual success in overcoming the handicap of an injury."

That part of the report which estimates the disability of Runkle for compensation purposes is, therefore, immaterial, for it is not an estimate of *his* ability to pursue *any* gainful occupation, but is an estimate of the "average impairments of earning capacity resulting from such injuries in civil occupations similar to the occupation of the injured man at the time of enlistment."

Plaintiff also offered a rating made by the Central Office Board of Appeals, on April 12, 1923, after the death of the insured. This was properly excluded; it was not identified, and it states no facts pertinent to the inquiry. In United States v. Golden, 34 F. (2d) 367, 370, this court said: "This is enough to indicate the immateriality of 'ratings' for compensation in an insurance case. The doctors making the 'ratings' are of course competent witnesses, just as doctors examining for other purposes are; but it is their testimony that is competent, and not the Bureau's 'rating' predicated thereon."

The judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.