**FARLEY, Postmaster General, v. SIM-MONS. ***

No. 7007.

United States Court of Appeals for the District of Columbia.

Decided June 27, 1938.

Rehearing Denied July 29, 1938.

John J. Wilson and Howard Boyd, Asst. U. S. Attys., both of Washington, D. C., for appellant.

Horace J. Donnelly, Jr., of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a decree of the District Court of the United States for the District of Columbia enjoining the appellant, James A. Farley, Postmaster General of the United States, from enforcing a fraud order against the appellee.

It was made to appear in a hearing held by an Assistant Solicitor of the Post

Office Department that: The appellee, doing business in New York City, under the trade names Paris Import Company, Bell Import Company, and Sel-More Company, caused to be published during the year 1936 and through January 1937, in a substantial number of the so-called "pulp" magazines, many of which contained salacious stories, pictures of nudes, and sexy advertisements, the following advertisements of his own:

"ART OF LOVE

"Illustrated Booklet

"Also Peaches and Browning, Dumb Dora, Maggie & Jiggs, Boss and Bubbles, Andy Gump & Min, Adam & Eve, Kip & Alice, Night in Paris, Toots & Casper, A Coachman's Daughter, and over 100 more jokes of similar type; also 30 actual photos, Montmartre Type, of men and women in different affectionate poses, also including women models alone in various poses, etc., etc. In addition to this we send you over 70 snappy miniature pictures on a page, enlargements can be had of any miniature you select at bargain prices.

"These are all GLOSSY FINISHED, ACTUAL PHOTOGRAPHS from IMPORTED NEGATIVES. Also some short stories and 12 interesting letters. No obscenity. You will receive ALL THE ABOVE. Send cash, money order or stamps. Immediate shipment. Special—All for $1.00.

"PARIS IMPORT COMPANY,
"4166 Park Avenue, Dept. A.,
"New York City."

"CARTOON BOOKLETS AND GENUINE PHOTOS

"Special—Four (4) Sample Illustrated CARTOON BOOKLETS (vest pocket size), also four (4) Combination Picture Sets (unretouched) in different positions standing, sitting, lying, etc. These 4 Combination sets comprise in all over 32 different poses, and are ACTUAL Photos with glossy finish. All this included with sample set of other goods, for $1.00 Bill. Immediate shipment, and sent sealed.

"BELL IMPORT CO.,
"Dept. A., P. O. Box No. 14,
"Fordham Station, New York City."

"SECRETS OF LOVE MAKING

"Fully explained. Various methods How to Make Love, the Mystery of Love Making in detail. This book measures 5 x 7½ inches and contains 95 pages of Fluent, Detailed and Intriguing reading.

"Get your copy today. Sent prepaid only on receipt of $1.00, our Special Price. You may send cash, money order or stamps. No C. O. D. orders filled on this special.

"SEL-MORE Co.,
"Dept. S, 4160 Park Avenue,
New York City."

There is a book by one Dr. W. F. Robie bearing the title "The Art of Love," containing sex histories of men and women. There is also a booklet "Art of Love" by "Count K" which is not obscene. There are "sold and circulated," but not by the appellee, certain obscene cartoon booklets, vest pocket size, bearing titles similar to those mentioned in the appellee's advertisement "Art of Love," and these are known to the trade as obscene; and there are also publicly sold and circulated, but not by the appellee, certain other cartoon booklets bearing titles similar to those mentioned in the appellee's advertisement "Art of Love," which booklets are not obscene—they contain materials similar to those appearing in the comic strips in the public press. Those who respond to the appellee's advertisements by sending through the mails the money required thereby, receive from the appellee material which is innocent in character and worthless.

Upon the basis of the evidence adduced at the hearing held by the Assistant Solicitor, the Solicitor of the Post Office Department found that by the wording of the advertisements, and by running them in the type of magazines above alluded to and thereby appealing to the class of persons among whom such magazines circulate, the appellee intended to induce the readers of his advertisements to believe that if they sent to him the money required they would receive obscene, lewd, and lascivious cartoon books and photographs, whereas he actually intended to furnish, and did actually furnish, upon receipt of orders, worthless matter not of an obscene, lewd, or lascivious character. The Solicitor found that the appellee was therefore conducting, under the trade names mentioned, a scheme "for obtaining money through the mails by means of false and fraudulent pretenses, representations and promises . . ."; and the Solicitor recommended to the Postmaster General the issuance of a fraud order. Upon the basis of these findings and this recommendation, the Postmaster General, pursuant to the provisions of Rev.Stat.

§ 3929 and Rev.Stat. § 4041,[1] as amended, issued a fraud order.[2]

The appellee then filed an injunction suit against the Postmaster General, praying therein that enforcement of the order be restrained. The case was heard by the trial court upon bill and answer, and upon the record of the hearing before the Assistant Solicitor of the Post Office Department, which record was included in the answer. The trial court filed a memorandum opinion containing findings of fact and conclusions of law, and upon the basis thereof entered the decree of injunction from which this appeal is taken.

In the course of the memorandum opinion the trial court gave as reasons for its decision the following:

(1) That there is nothing in the record to indicate that the appellee had any knowledge, prior to the publication of his own advertisements, as to what were to be the other contents of the magazines in which his advertisements appeared; (2) that the advertisement of the Paris Import Company contained the words "No obscenity"; (3) that the testimony of a Post Office Inspector, at the hearing in the Post Office Department, to the effect that obscene and immoral cartoon booklets with names similar to those advertised by the appellee, and to the effect that the book "The Art of Love," by Dr. W. F. Robie, are "sold and circulated," was insufficient to indicate the source of such publications and that they are generally known and available to the public; (4) that the material furnished by the appellee to persons ordering the same in response to his advertisements appeared to be in strict conformity with the description and the representations in the advertisements; (5) that the testimony of a Post Office Inspector at the hearing in the Post Office Department that the "spiel" of a magazine salesman at a burlesque theater indicated that the contents of one of the magazines in which the appellee's advertisements were run was of a salacious or obscene nature, and indicated that salacious or obscene material would be sent to those responding to the advertisements in that magazine, was not binding upon the appellee, there being no showing that he had any knowledge of or connection with the "spiel" of the salesman; (6) that "the findings of the Solicitor that persons who read magazines of the type in which plaintiff advertises are of a class that desires to obtain obscene, lewd and lascivious matter, and that members of the public are led to believe by the advertising of the plaintiff that plaintiff furnishes such matter, are mere opinions unsupported by necessary evidence and not susceptible of proof"; and the trial court indicated that in its view the case was therefore governed by American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, 1902.

We shall discuss the case in terms of the reasons given by the trial court for its decision:

█ (1) It was erroneous for the trial court to conclude that there was nothing in the record to indicate that the appellee had any knowledge, prior to the publication of his own advertisements, as to the other contents of the magazines in which his advertisements appeared. It is fairly to be inferred that one operating a business knows the nature of the contents of an advertising medium chosen by him. But quite apart from this, it was without dispute that the appellee did place his advertisements in the magazines in question and that they did contain the other contents alluded to. The appellee was therefore bound by the consequences of his choice of magazines, whether or not he had knowledge in advance of publication as to the contents thereof.

█ (2) The words "No obscenity" in the advertisement of the Paris Import Com-

1 39 U.S.C. § 259 (1934), 39 U.S.C. § 732 (1934), 39 U.S.C.A. §§ 259, 732.

2 The fraud order in the usual terms forbade the postmaster at New York to pay any postal money order drawn to the order of the appellee's companies or their officers or agents; directed the postmaster to inform the remitters of such postal money orders that payment thereof had been forbidden and that the amounts would be returned to the remitters upon a proper application by them, and instructed the postmaster to return all letters and mail matter directed to the appellee's companies or their officers and agents to the postmasters in the offices at which such letters and mail matter were originally mailed, the same to be delivered to the senders marked "fraudulent"; and further directed the postmaster, if the names of the senders of such letters or mail matter were not indicated thereon, to return the same to the Division of Dead Letters marked "fraudulent."

pany' are of no materiality in respect of the other two advertisements of the appellee. Moreover, the words were not of controlling effect in respect of the Paris Import Company advertisement itself. The Postmaster General was entitled to consider the whole of the advertisement, and it was not unreasonable for him to conclude that, despite the use of the words "No obscenity" therein, obscene material was being promised. In respect of this see the following cases holding that even if an advertisement is so worded as not to make an express misrepresentation, nevertheless, if it is artfully designed to mislead those responding to it, the mail fraud statutes are applicable. McCarthy v. United States, 2 Cir., 187 F. 117, 1911; Oesting v. United States, 9 Cir., 234 F. 304, 1916, certiorari denied 242 U.S. 647, 37 S.Ct. 241, 61 L.Ed. 544, 1917.

(3) All that the Solicitor said in respect of the book "The Art of Love" by Dr. W. F. Robie and concerning cartoon booklets with names similar to those advertised by the appellee was: that there was exhibited in evidence a book "The Art of Love" by Dr. W. F. Robie containing sex histories of men and women of an obscene, lewd and lascivious character, and also a booklet "Art of Love" of an innocent character by one Count K; that there were certain cartoon booklets bearing titles similar to those mentioned in the appellee's advertisement "The Art of Love," which booklets were known to persons interested in such matter as being grossly obscene, or which were "well known" as obscene. We do not discover in the record a finding by the Solicitor that such materials are generally known and available to the public; and we do not discover a finding as to the source of these materials. But even if there were no findings or evidence on this subject at all, the order of the Postmaster General is, as we point out below, supportable.

(4) In ruling that the material furnished by the appellee appeared to be in strict conformity with the description and the representations in the appellee's advertisements, the trial court substituted its judgment on the question of fact as to the meaning of the advertisements for that of the Postmaster General. We point out more particularly, *infra*, that under the law governing these cases the courts are not to disturb the factual determinations of the Postmaster General unless the same are palpably wrong.

(5) To the extent that the Post Office Inspector testifying at the hearing in the Post Office Department repeated the "spiel" of the magazine salesman as to the nature of the contents of a magazine referred to by him, and of the advertisements therein, and of the material which would be sent to those responding to the advertisements, the Inspector's testimony was hearsay. But the Postmaster General, as an administrative officer conducting a hearing under a statute which he is charged with the duty of enforcing, is not bound to apply the rules of evidence with all of the strictness with which they are required to be applied in proceedings in a court. Hall v. Willcox, C.C.S.D.N.Y., 225 F. 333, 1906; United States and Interstate Commerce Commission v. Abilene & Southern Ry. Co., 265 U.S. 274, 288, 44 S.Ct. 565, 569, 68 L.Ed. 1016, 1924; Elliott Works, Inc., v. Frisk, D.C.S.D. Iowa, 58 F.2d 820, 824, 1932. Moreover, the consideration of this testimony cannot be said to have been so harmful or so unfair as to vitiate the hearing as a whole. Cf. Arnold v. Collins, 56 App.D.C. 308, 12 F.2d 843, certiorari denied 273 U.S. 717, 47 S.Ct. 109, 71 L.Ed. 856, 1926; Hazen v. Hawley, 66 App. D.C. 266, 273, 86 F.2d 217, 224, 1936, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452, 1937.

(6) In respect of the conclusion of the trial court that the findings of the Solicitor were mere opinions unsupported by necessary evidence and not susceptible of proof, and that the case was therefore governed by American School of Magnetic Healing v. McAnnulty, supra: In the McAnnulty case the complainants sought an injunction against a fraud order. In their bill of complaint they charged that the order was issued because the complainants were conducting a business upon the theory that "the mind of the human race is largely responsible for its ills, and is a perceptible factor in the treating, curing, benefiting and remedying thereof, and that the human race does possess the innate power, through proper exercise of the faculty of the brain and mind, to largely control and remedy the ills that humanity is heir to," and this without respect to "what is commonly known as divine healing and Christian science . . . ." According to their bill, the complainants

carried on their business by sending out through the mails, for a consideration, treatments based upon the theory above stated, and also instructions to those who wished to become healers under this theory. The complainants alleged that the treatment was "confined to practical scientific treatment emanating from the source aforesaid," that is to say, from the alleged faculty of the brain and mind to control and remedy human ailments. Upon a general demurrer to this bill of complaint the Supreme Court of the United States held that, upon the facts therein stated and admitted by the demurrer, the complainants were entitled to injunctive relief because whether or not the human mind is susceptible of controlling and remedying human ailments is a scientific question in respect of which at the time of the case scientific opinion was still so unformed and divided that the answer was wholly conjectural, and therefore the Postmaster General could not conclude that the representations upon which the business was founded were untrue.

The case is distinguishable from the instant case. The question in the McAnnulty case was as to the possibility of proving the alleged untruth of the representations. And the representations in that case lay in a field of scientific or pseudo-scientific knowledge. There was no question as to what the representations were. In the instant case the representations and promises of the appellee lie in no field of scientific or pseudo-scientific knowledge. And in the instant case if the finding of the Postmaster General, through the Solicitor—that the appellee's advertisements were intended to induce the readers to believe that they would receive salacious and obscene material—is supportable, there is no question as to the untruth of the representations and promises, because it is without dispute that the material furnished by the appellee was of a non-salacious and non-obscene nature. The principal question before the Postmaster General was, therefore, an ordinary question of fact, to wit, the question what, under all of the circumstances of the case made to appear in the hearing before the Assistant Solicitor, were the representations and promises in the advertisements of the appellee reasonably intended to cause the reader thereof to believe in respect of the nature of the material offered for sale.

It is well settled in respect of fraud order cases that "the conclusion of a head of an executive department on such a question, when committed to him by law, will not be reviewed by the courts where it is fairly arrived at and has substantial evidence to support it, so that it cannot justly be said to be palpably wrong and therefore arbitrary." Leach v. Carlile, 258 U.S. 138, 140, 42 S.Ct. 227, 228, 66 L.Ed. 511, 1922; Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894, 1904; National Conference on Legalizing Lotteries, Inc., v. Farley, 68 App.D.C. 319, 96 F.2d 861, decided by this court March 28, 1938. Aptly illustrating a proper application of this rule is the case of Putnam v. Morgan, C.C.S.D.N.Y., 172 F. 450, 1909, which closely parallels, in respect of the point under immediate discussion, the instant case. In that case the complainant, who sought to enjoin the enforcement of a fraud order, advertised that for ten cents she would furnish a cake of soap and give away free also a "new safety razor outfit." She actually delivered, for the ten cents, a cake of soap which she had previously been selling at two cents and a safety razor. The question in the case was two-fold: whether advertising delivery of a safety razor outfit and actually delivering only a razor was a fraud, and whether, since the soap had been previously sold at two cents per cake, it could be said without fraud that at ten cents for both the cake and the razor anything was being given away free. The court, speaking through Judge Learned Hand, then District Judge, reasoned as follows:

"In this case I cannot say that there was no evidence upon which he might have found that the complainant did not intend ever to sell her soap at ten cents a cake, but that it was a mere fetch for her to represent it as sold at that price with the razor thrown in at first, for an advertisement. If it be a question of law whether the postmaster had any evidence at all to go on, and if I must have a clear case of error upon that question of law, I cannot say that the continued sale of razor and soap together, the trifling cost of the soap, the profit on the transaction, as the postmaster has found it, and the other sales of soap at two cents, do not together make some evidence that the complainant never meant bona fide to sell her

348

soap alone at the figure she put on it, when she gave away the razor "free.'

"Again, even if the article sent be in fact a 'new safety razor outfit,' I will not say that the most malign interpretation which can in reason be put on those words would not justify the expectation of much more than what the purchaser actually got. Personally, as I have said, I should not have held the complainant to so strict an interpretation of her advertisement. I think the razor fairly answers the description; but, if a writ is to go, I must go further, and hold that no one can reasonably conclude anything else, and I will not say that.

"With the limited jurisdiction which I have, even under School of Magnetic Healing v. McAnnulty, supra, I do not think I can do anything else than deny the motion, and therefore I deny it." [172 F. at page 451]

Under the law as above stated we must conclude that the trial court in the instant case was in error in enjoining the fraud order. We think it cannot be said that the evidence upon which rested the findings of the Postmaster General was so insubstantial as to render the findings arbitrary. And we think it cannot be said that there was any clear error of law which would vitiate the fraud order. If there be omitted from consideration all of the evidence in the case except the appellee's advertisements themselves, the stories, pictures and other advertisements in the magazines in which the appellee's advertisements appeared, and the evidence which established that those who responded to the advertisements of the appellee received material of a non-salacious and non-obscene nature, the order of the Postmaster General is supportable. Looking at this evidence alone, it cannot be said that the finding that the appellee was conducting a scheme to obtain money through the mails by false representations or promises was unreasonable. In the words of the learned judge in Putnam v. Morgan, we "will not say that the most malign interpretation which can in reason be put on . . . [the appellee's representations and promises] would not justify the expectation of much more than what the purchaser actually got." Indeed, especially in view of the reference in the advertisement entitled "Art of Love Illustrated Booklet" to "30 actual photos, Montmartre

Type, of men and women in different affectionate poses, also including women models alone in various poses, etc., etc.," and in view of the reference in the advertisement entitled "Cartoon Booklets and Genuine Photos" to "four (4) Combination Picture Sets (unretouched) in different positions standing, sitting, lying, etc.," and in view of the title itself of the third advertisement "Secrets of Love Making" and the reference thereunder to the "Mystery of Love Making in detail" and to "Fluent, Detailed and Intriguing reading," we think that not only can it not be said that the finding—that the appellee's advertisements were intended to induce the readers to believe that for a consideration they would receive salacious and obscene material—was unreasonable but we think also that a contrary finding by the Postmaster General would have been difficult to make.

 We think it clear upon the evidence in the case that the appellee was carrying on a scheme calculated fraudulently to prey upon the curiosity of the salacious minded. They, as well as the innocent, are entitled to the protection of the laws against fraud.

Reversed.