**FANNING v. WILLIAMS et al.**

No. 11998.

United States Court of Appeals
Ninth Circuit.

Feb. 28, 1949.

H. G. Morrison, Asst. Atty. Gen., and James M. Carter, U. S. Atty., Clyde C. Downing, Bernard B. Laven and Max Deutz, Asst. U. S. Attys., all of Los Angeles, Cal. (Edward H. Hickey, Sp. Asst. to Atty. Gen., and Howard C. Wood, Attorney, Dept. of Justice and William C. O'Brien, Atty. Post Office Dept., both of Washington, D. C., of counsel), for appellant.

Charles H. Rowan and Willis W. Hagen, both of Milwaukee, Wis., for appellee.

Before DENMAN, Chief Judge, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

On December 10, 1945, the Postmaster General issued a fraud order against Al Williams, the Al Williams Health System of Los Angeles, Inc., a corporation, and other allied Al Williams interests, containing the usual ban against the use of United States mails, 39 U.S.C.A. §§ 259 and 732. The fraud order was issued after a hearing before an assistant solicitor of the Post Office Department at which expert medical testimony, as well as testimony

as to the results of chemical analyses made of products advertised and sold by appellees was adduced. Appellees asked for and received an injunction restraining appellant from enforcing the fraud order. The trial court based its findings and judgment on the ground that there is no substantial evidence in the record to support the fraud order. That court considered the evidence relied on by the Postmaster General to be no more than opinion evidence of the character held insufficient in the case of American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

This case arose out of representations made to the general public, through extensive advertising, as to the efficacy of the so-called "Al Williams Reducing Plan". The plan consists of prescribed diets, exercise, internal baths, the taking of certain prescribed tablets for the elimination of hunger, and the use of a special body massage creme to tighten skin which usually sags when loss of weight occurs. The advertisements represented that obese persons would lose ǀweight easily and *safely* regardless of the number of pounds overweight; that a few days use of the tablets would result in elimination of the user's desire to overeat, and cause him to "feel full of pep and have more energy", and that the plan did not include a strict diet.

The evidence before the Postmaster General consisted of the testimony of a Post-office Inspector who identified certain advertisements as having been sent through the mail; the evidence of a qualified chemist as to the chemical elements and their quantities found to be present in the advertised tablets and skin-tightening creme; the evidence of a microanalyst as to the food ingredients detected in the tablets, and the evidence of a physician qualified to speak concerning the consensus of modern medical knowledge on the subject of obesity. This physician testified that the low caloric diet advertised by appellees was not *safe* for all persons; that it was not easy to follow in that the users were bound to become hungry; that the tablets would have no appreciable effect in counteracting the stomach contractions

which cause hunger; that the tablets would not leave the taker "full of pep and energy", and that application of the creme would have no effect in eliminating flabby skin.

 This is in substance the testimony supporting the fraud order. We are unable to agree with the conclusion that it is unsubstantial and mere opinion. It is the statement of facts known to the trained medical mind. These facts have been ascertained through experiments conducted by many engaged in medical research throughout the years and which the physician learned through reliable sources as well as personal experience. It is a fact well known even to laymen that to reduce the intake of food below the normal requirement will cause loss of weight. The diet prescribed by the "Al Williams Reducing Plan" was in this respect on firm ground. But when it goes further and holds out to the public that it is safe for all persons from 12 to 80, a dangerous misrepresentation occurs. Medical research, as testified by the physician, has proven that it is not *safe* to prescribe a reducing diet without a complete physical examination. In so testifying, the physician was not giving his mere opinion, he was asserting the conclusions of the medical profession, based on experiments, observations and research. There is no evidence in this record that trained and intelligent medical minds differ on the question that all persons cannot use the same diet with safety. This alone distinguishes this case from that of American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90. In that case the court held that the truth of the allegations was a matter of opinion and, by its nature, incapable at that stage of scientific knowledge of being proven factually. That a diabetic or one suffering from tuberculosis may be harmed by a certain prescribed diet is capable of proof, and, according to the medical testimony, has been proven. If we reject expert medical findings based, as they are, upon years of research, observation and experience, on the ground that they are not substantial and are mere opinion, we close the door to the prevention of a variety of frauds and impositions that

may be imposed upon the public and disregard accepted and established practice relative to competent and relevant testimony. It is the only creditable evidence which may reach certain situations. The testimony of the medical witness in the instant case does not lie within the realm of speculation which characterized the McAnnulty case, supra. The susceptibility to proof of an allegation that bodily ills are controllable by the mind is one thing, the question of the effect of tablets on bodily hunger, and the safety and ease with which they may be taken, quite another. The tablets were analyzed by accepted scientific techniques and their contents established. Testimony of the effect on the body tissue of the ingredients they contain is no more "speculative opinion" than are the known effects of swallowing sulphuric acid.

The distinctions we draw between mere opinion and scientific fact is recognized in many cases following American School of Magnetic Healing v. McAnnulty, supra. See, for example, Research Laboratories v. United States, 9 Cir., 167 F. 2d 410; Farley v. Simmons, 69 App.D.C. 110, 99 F.2d 343; Elliott Works v. Frisk, D.C., 58 F.2d 820. The recent case of Pinkus v. Reilly, 3 Cir., 170 F.2d 786, in dealing with a reducing scheme, upheld an injunction against a fraud order the Postmaster General had issued. In that case, however, there developed at the hearing a conflict of medical testimony as to the therapeutic value of the product in question. It was apparent that there were two schools of thought among the medical profession and no consensus has as yet crystallized. We have no such situation here. On the contrary, it affirmatively appears that the testimony given represented the consensus of scientific knowledge. There is substantial evidence to support the fraud order.

Appellees have argued before this court that they were denied a full, fair and impartial hearing, and that the Postmaster General's fraud order was not fairly arrived at in that a motion of appellees to reopen the case before the Postoffice Department for the purpose of taking depositions of medical doctors was improperly denied; also, the denial of a motion by appellees that the Postoffice Department make scientific tests of the tablets.

These questions were before the trial court but not passed upon by it. Because of the view we have taken of the sufficiency of the evidence to support the fraud order, the sole question decided by the trial court, we think opportunity should be given the trial court to make disposition of the remaining questions in such manner as it may be advised.

The order for summary judgment and the order granting a permanent injunction are reversed.