**D. C. TRANSIT SYSTEMS, INC., Appellant,**

v.

**Minnie SIMPKINS, Appellee.**

**No. 9857.**

District of Columbia Court of Appeals.

Argued Dec. 18, 1975.

Decided Dec. 13, 1976.

William M. Treadwell, Washington, D. C., for appellant.

Arnold J. Sperling, Washington, D. C., with whom Kenneth Braunstein, Washington, D. C., was on the brief, for appellee.

Before FICKLING and GALLAGHER, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal from a $9,000 judgment after a nonjury trial in an action for damages for personal injury by a passenger, who had fallen inside a D. C. Transit bus. The negligence and liability of the bus company were not disputed in the trial court and the only error assigned on appeal concerns the amount of damages,

based upon a finding that the injury incurred was permanent in nature.

The plaintiff, a woman of 60, was thrown to the floor of the bus when the vehicle swerved violently in traffic to avoid colliding with another bus, operated by the same company, appellant here. The passenger was taken by ambulance to Providence Hospital, where she was treated for pain and bruises on the back, neck, and legs, and then released. The next day she visited the offices of Dr. Granville Moore, a general practitioner, who gave her some injections to relieve the pain. She continued to visit him on a monthly basis for about two years. He prescribed a back brace, which she wore almost continually for a year and occasionally thereafter. She testified at the trial that she still suffered recurrent pain, which diminished her ability to work at domestic jobs.

The plaintiff's testimony with respect to her physical condition was corroborated by three other witnesses, relatives and friends, who had seen her frequently both before and after the accident. By stipulation of the parties, the court admitted into evidence a report of her physician, Dr. Moore, describing his diagnosis, treatments, and her current symptoms. It stated that he regarded her "as forty percent disabled on a permanent basis because of her back injury". The doctor was not called to the stand.

The only witness called by appellant was Dr. Charles H. Epps, an orthopedic surgeon, whom the parties stipulated, qualified as an expert. He had examined her shortly before trial. He testified that while the accident had probably caused some soft tissue injuries, these had healed without leaving residual effects, and that he found no trace of any permanent disability.

In weighing the conflicting testimony, and taking into account the substantial out-of-pocket expenses—some $1,200—and the likelihood of some physical deterioration incident to old age, the court found that plaintiff did have "a permanent injury . . . causally connected with the accident" and that the sum of $9,000 was awarded her as "fair compensation".

Appellant's position is that the finding of an injury of a permanent nature cannot stand because the only evidence upon which it was based consisted of testimony of laymen "buttressed by a second-hand typewritten medical report". It points out that such evidence was flatly contradicted by the opinion of an acknowledged medical expert who took the stand and was subjected to cross-examination. According to appellant, as Dr. Epps was the only truly qualified medical expert who testified at the trial, his opinion on the crucial issue of permanent partial disability should have been deemed controlling by the trial court, as it was not "rebutted by equally creditable and qualified expert medical opinion".

In support of this thesis, appellant cites a number of judicial decisions which have held that the opinions of experts, in contradistinction to those of laymen, may be accepted as substantive evidence of fact, e. g., *Simmons v. Farley*, 18 F.Supp. 758 (D. D.C.1937), *rev'd on other grounds*, 69 U.S. App.D.C. 110, 99 F.2d 343, *cert. denied*, 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 422 (1939); *Elliot Works, Inc. v. Frisk*, 58 F. 2d 820 (S.D.Iowa 1932); and *Runkle v. United States*, 42 F.2d 804 (10th Cir. 1930). As these cases all deal with the competency of expert testimony, either excluded or received, none of them is squarely in point for the proposition urged. *Runkle*, however, does contain dicta helpful to appellant, for the court there, in reviewing a judgment holding that a lung disease had not caused permanent disability at the time it was first diagnosed, remarked that whether ". . . an opinion can or cannot be formed is in itself a question for experts". 42 F.2d at 806.

■ Opposing counsel's retort to these contentions is that the appeal before us is frivolous and was filed only for purposes

of delay,[1] arguing that because there was some evidence to support the judgment, it may not be set aside under D.C.Code 1973, § 17–305. It is well established, of course, that where there is conflicting testimony which the trier of fact has resolved by a finding, such finding will not be disturbed unless unsupported by substantial evidence, *e. g., Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health and Welfare Trust,* D.C.App., 310 A.2d 604, 606 (1973). But one exception to this rule, which counsel seems to have overlooked, is the limited deference accorded trial court judgments rejecting expert testimony allowed to go unrebutted by countervailing testimony of this sort.

■ The validity of this exception gained strong recognition in this court in *Parks v. United States,* D.C.App., 294 A.2d 858 (1972), and *Hermann v. United States,* D.C.App., 304 A.2d 22 (1973), where convictions for exhibiting obscene films were reversed where the government failed to call rebuttal witnesses to contradict the opinions of expert witnesses, who had testified that the films in question did not offend national community standards.[2] If one who professes expertise in such a non-academic and non-scientific field as obscenity can qualify in court as an expert, it would seem to follow *a fortiori* that the opinion of an expert witness qualified to practice medicine after graduation from an accredited medical school and intensive post-graduate training and experience in hospitals, would ordinarily be deemed paramount to any conclusions of non-expert witnesses.

■■ Accordingly, if the finding of the trial court in the case before us rested only on the testimony of plaintiff and the friends and relatives she called to testify with respect to her asserted disability, it might well be argued that such finding in the face of Dr. Epps' testimony lacked the requisite evidentiary support. But, in our opinion, such support was provided by the report of Dr. Moore, which was received in evidence by stipulation. It is true that appellant's counsel did not expressly concede that Dr. Moore, a general practitioner, could qualify as an expert, but as the exhibit shows on its face that its crucial conclusion of partial disability rested entirely on opinion, its proffer and admission without specific objection to the qualifications of its author was clearly for the purpose of supporting plaintiff's claim by expert testimony. Moreover, by stipulating to its admission, counsel cannot be heard to say that he was deprived of his right to cross-examine.

Accordingly, the court sitting as a trier of fact was not precluded from attaching some credence to it despite the contrary testimony of the orthopedic surgeon. *See Sher v. De Haven,* 91 U.S.App.D.C. 257, 262, 199 F.2d 777, 782 (1952).

*Affirmed.*

GALLAGHER, J., concurs in the result.

---

1. Citing D.C.App.R. 38, he filed a motion for damages and costs. As our opinion indicates, the issue raised by appellant is far from frivolous. Hence this motion is denied.

2. These opinions were handed down before the so-called *Roth-Memoirs* test of national community standards was discarded by later Supreme Court decisions. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 2d 419 (1973) ; *Parish Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed. 2d 446 (1973), and other cases cited in *Retzer v. United States,* D.C.App., 363 A.2d 307 (1976).