Fred J. EARLY, Jr., Co., Inc., Massman Construction Co., and Washington Metropolitan Area Transit Authority, Appellants,

v.

Ethel WAGNER, Appellee.

No. 11964.

District of Columbia Court of Appeals.

Argued Jan. 9, 1978.

Decided Aug. 17, 1978.

Rehearing and Rehearing En Banc Denied Oct. 24, 1978.

Leo A. Roth, Jr., Washington D. C., with whom Laurence T. Scott, and F. Wainwright Barnes, Washington D. C., were on the brief, for appellants.

Peter L. Sissman, Arlington, Va., with whom Lawrence P. Lataif, Arlington, Va., was on the brief, for appellee.

Before KELLY, HARRIS and FERREN, Associate Judges.

HARRIS, Associate Judge:

Appellants seek review of a jury verdict awarding appellee $120,000 for damages allegedly incurred as the result of a November 1973 accident. Appellants contend that since appellee failed to present expert medical testimony establishing a causal connection between the 1973 accident and all of her injuries, the trial court erred in permitting the jury to consider any residuals and expenses incurred after 1974, and in allowing the jury to consider a 1975 accident suffered by appellee. We agree with these contentions. Accordingly, while we affirm the jury's finding of negligence, we set aside the verdict and remand the case for a new trial on the issue of damages.

On November 15, 1973, a barricade at a Washington Metropolitan Area Transit Authority (Metro) construction site toppled onto appellee. As a result of this incident, appellee, an elderly woman, suffered an open compound fracture of her left tibia and a Colles' fracture of the left radius (just above her wrist) which left a deformity. Dr. David Gunlock, an orthopedic surgeon, treated appellee while she was hospitalized for those injuries. Appellee was discharged from the hospital on December 13, 1973, but had to be readmitted on Janu-

ary 15, 1974, because of thrombophlebitis. Dr. Gunlock, who treated her for that condition testified that a causal relationship existed between the 1973 accident and the 1974 thrombophlebitis.

Prior to the 1973 accident and the subsequent thrombophlebitis, appellee had been plagued by a long and complicated medical history. She had suffered from hypertension and heart disease. She had fractured her hip in 1965, had been hospitalized for a subtotal gastrectomy in 1962, experienced convulsions in 1965 and 1971, had bilateral cataract surgery in 1970, and may have had a subarachnoid hemorrhage in 1970. Glaucoma caused her to lose sight in her right eye. She also had been diagnosed and treated for vascular problems in her legs, had been the victim of two strokes, and suffered from cerebral thrombosis. Dr. William Hart, appellee's internist, testified that appellee had told him she suffered from a weakness on her left side. He did not know whether this stemmed from her earlier strokes or from the 1973 accident.

Following appellee's release from the thrombophlebitis hospitalization, Dr. Gunlock wrote the following clinical notes (dated March 14, 1974) from which he testified at trial:

Patient is seen for routine check-up and is continued, and has continued to do so well. Is somewhat unsteady on her feet, due to equilibrium problem, secondary to her past CVA strokes, and is using a cane in her right hand. She . . . is bearing full weight easily.

He also testified that the healing of the fractures was complete, that appellee was capable of full weight-bearing by February 7, 1974, and that the injured bones were as strong as they had been before the fractures.

In November of 1974, appellee again was hospitalized because a television set fell upon the same leg which had been injured in the barricade accident. Thereafter, in late 1975, appellee fell in her bathroom and broke her shoulder. She contends that the fall in the bathroom was due to a weakness in her left side which was a direct result of the 1973 barricade accident.

Appellee came to court in a wheelchair. She testified that since the barricade accident she had been unable to walk without a walker or someone's assistance. She also had been unable to work since the accident. Appellee testified that the left side of her body was very weak: "I can never tell when it will fold up and I'll fall." With reference to her 1975 fall in the bathroom, she said: "The left side just got weak and folded up like and I fell." When asked what the present condition of her left side was, she said: "I would say it was in a mess. It's just weak. It's not reliable. You can't depend upon it. You get to be afraid to walk or anything else."

At trial, appellee presented only the following expert testimony: (1) Dr. Gunlock's statement that to his knowledge appellee's left side, prior to the barricade accident, was the good part of her body; (2) Dr. Gunlock's opinion that a causal relationship existed between the barricade accident and appellee's later hospital admission for thrombophlebitis; and (3) Dr. Hart's testimony, admitted over objection, as to what appellee had told him was the cause of the injury to her left shoulder (Dr. Hart did not express a personal opinion regarding the existence of a causal link between the barricade accident and the bathroom fall). Other than her own testimony, appellee presented no direct testimony connecting the barricade accident with the injuries resulting from her fall in the bathroom, nor with any injuries she may have suffered from the 1974 television set accident. Furthermore, appellee presented no direct testimony, other than her own, to indicate that her injuries were permanent.

Dr. Harvey H. Ammerman, a neurosurgeon, was called as an expert witness on behalf of the appellants. He examined appellee in June 1976, and testified that her chief complaint to him was weakness on her left side. Dr. Ammerman stated that, in his opinion, appellee's thrombophlebitis probably resulted from the 1973 fractures. Dr. Ammerman also testified, however, that he was unable to find any neurological basis

for her alleged inability to walk. He testified that appellee suffered from cerebral vascular disease as well as from heart disease and hypertension which made her subject to syncopal (fainting) episodes. Even a small change in her blood pressure, he stated, could cause her to feel faint and fall. In his opinion, the 1973 leg fracture played no part in causing the 1975 fall in the bathroom. Rather, he testified, the fall was a result of appellee's cerebral thrombosis.

Appellants concede that appellee established: (1) that the barricade accident caused a broken radius and a broken tibia; and (2) that the later thrombophlebitis was related to those injuries. With regard to those issues, a jury question was presented. Appellants contend, however, that appellee failed to present any expert testimony or, in the alternative, that the expert testimony which she did present was insufficient, to establish a causal connection between appellants' negligence with respect to the fall of the Metro barricade and appellee's subsequent ailments. Therefore, they argue, the evidence was insufficient to permit a proper presentation of the issue of permanent injury, or the issue of the 1975 bathroom fall, to the jury.

We previously have ruled that, absent medical testimony that injuries are temporary, the testimony of a plaintiff concerning continuing pain and suffering will suffice to send the issue of permanent injury to the jury. *See American Marietta Co. v. Griffin*, D.C.App., 203 A.2d 710, 712 (1964). However, we also have stated that expert medical testimony may be required where "recovery is sought for permanent injuries or when in determining causation, complicated medical questions must be resolved." *Jones v. Miller*, D.C.App., 290 A.2d 587, 590 (1972). Furthermore, in *D. C. Transit Systems, Inc. v. Simpkins*, D.C.App., 367 A.2d 107 (1976), we intimated that expert medical testimony, if uncontradicted by other expert testimony, is paramount over lay testimony offered by a plaintiff. *Id.*, at 109.

Appellee did testify regarding her pain, suffering, and weakened condition since 1973, indicating that the barricade accident had left her with a permanent weakness in her left side. She failed, however, to present any expert medical testimony linking the 1973 injuries with the 1975 fall in the bathroom. Appellants, on the other hand, presented Dr. Ammerman's uncontradicted expert testimony that the 1975 fall in the bathroom did not result from the injuries appellee sustained in the 1973 accident. Indeed, as noted, Dr. Ammerman expressed his opinion that the 1975 fall was attributable to appellee's cerebral thrombosis. Additionally, Dr. Ammerman stated that the 1973 fractures were well-healed. This testimony was supported by that of Dr. Gunlock, appellee's own witness, who testified that there was a good union of the fractured tibia and the fibula, and that appellee was capable of full weight-bearing by February 1974. Considering the expert testimony presented by appellants which contradicted appellee's claim of permanent injury, and appellee's failure to present any expert testimony to support her position, we conclude that there was an insufficient evidentiary basis for submitting the overall issue of permanent injury to the jury. Additionally, since appellants presented expert testimony (uncontradicted by other expert testimony) to the effect that the 1975 accident was unrelated to the 1973 accident, the trial court erred in allowing the jury to consider as an element of damages the injury suffered by appellee in the 1975 bathroom fall.

Appellee cannot validly find support in our opinion in *Jones v. Miller, supra.* In *Jones,* we indicated that the question of causation could be answered by a plaintiff's own testimony if: (1) the disability first emerged coincidentally with or very soon after the negligent act, or (2) the disability was of a type which by its very nature reflected its cause, or (3) the cause of the injury related to matters of common experience, knowledge, or observation of laymen. *Jones v. Miller, supra,* at 590–91, quoting *Wilhelm v. State Traffic Safety Commission,* 230 Md. 91, 185 A.2d 715, 719 (1962). The instant case does not fit within any of those three categories.

While appellee did suffer from thrombophlebitis shortly after the injuries attributable to the negligent act, the fall in the bathroom did not occur until autumn of 1975, approximately two years after she was struck by the barricade and approximately one year after a television set had fallen on the same leg. No causal connection between the 1975 fall and the 1973 accident was made a part of the record. Considering appellee's lengthy and complicated medical history and her cerebral thrombosis, we could not say that the cause of the latest injury related to matters of common experience or knowledge. This case, therefore, was one in which, absent expert testimony on appellee's behalf, the consequences of the 1975 accident and the issue of permanent injury should not have been submitted to the jury. Accordingly, while the finding of negligence is affirmed, the case must be remanded for a new trial on the issue of damages.

*Affirmed in part, reversed in part, and remanded.*

KELLY, Associate Judge, dissenting:

Appellants raise several questions in their appeal concerning the extent expert medical opinion is necessary to recover damages for personal injuries caused by negligence. Two lines of authority bear on the issue. As to recovery for permanent injuries sustained in an accident, it is settled that the testimony by a plaintiff of continuing pain and suffering is sufficient to present a jury question of the issue of permanency if there is no contrary testimony that the injuries are temporary. *American Marietta Co. v. Griffin*, D.C.App., 203 A.2d 710 (1964); *Alamo v. Del Rosario*, 69 App.D.C. 47, 98 F.2d 328 (1938). Expert medical opinion may be required in a given case, however, if either the question of causality between the negligent act and the alleged injuries or of the permanency of the injuries is medically complicated. *Jones v. Miller*, D.C.App., 290 A.2d 587 (1972). And in *D. C. Transit Systems, Inc. v. Simpkins*, D.C.App., 367 A.2d 107 (1976), we recognized that it could be argued, in the face of a medical opinion by a qualified physician offered by the defense, that a finding for a plaintiff based only on a lay opinion was without evidentiary support. As to these legal principles, the majority and I agree. It is in their application to the facts of this case that we disagree.

Appellee had had extensive medical difficulties in the past. Added to these difficulties were her initial injuries in the 1973 accident and injuries in two subsequent accidents. True, there was Dr. Gunlock's testimony that there was a good union of the tibia and fibula after the barricade accident so that appellee was full weight-bearing by February 1974. In addition, it was Dr. Ammerman's opinion that these fractures were well healed and that appellee's fall in the bathroom related to her various circulatory ailments rather than to the barricade accident. Clearly, however, appellee's testimony of her pain, suffering, and weakened condition which had persisted since 1973 was sufficient to submit the issue of permanency to the jury. *Alamo v. Del Rosario, supra.* I believe, also, that appellee was competent to explain to the jury the simple physical facts of her fall in the bathroom two years after the accident (*i. e.*, left-sided weakness) and that on the question of causality her testimony was sufficient to have the jury consider whether, despite Dr. Ammerman's medical opinion, evidence of that injury could be included in assessing damages arising out the 1973 accident. Accordingly, I would affirm.