**PEAK LABORATORIES, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES POSTAL SERVICE,**
Defendant-Appellee.

No. 75–3798.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1977.

Jack Paller, Atlanta, Ga., for plaintiff-appellant.

John W. Stokes, U.S. Atty., William D. Mallard, Jr., Atlanta, Ga., for defendant-appellee.

Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN,* District Judge.

PER CURIAM.

The ultimate issue in this case is whether *Donaldson v. Read Magazine,* 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948), compels us to decide that the appellant, Peak Laboratories (Peak), made a false representation in an advertisement extolling the virtues of their product, "Fat-Off." A Postal Service Judicial Officer upheld the contentions in an administrative complaint of the appellee, the United States Postal Service (Postal Service), alleging that Peak was engaged in a scheme or device for obtaining money or property through the mails by means of a false representation in violation of 39 U.S.C. § 3005.[1] Peak sought judicial review of the Postal Service order in the United States District Court for the Northern District of Georgia. The District Court granted summary judgment for the Postal Service,[2] and Peak appeals. We are bound by the District Court's findings of fact unless clearly erroneous and, in this case, we are convinced that the District Court did not misapply the applicable law to the factual situation presented. Accordingly, we affirm.

Peak was responsible for running advertisements promoting their product, "Fat-Off." In its administrative complaint[3] the Postal Service alleged that by means of such advertisements, Peak falsely represented, directly or indirectly, in substance and effect:

    a. That the use of the product will cause a loss of fat;

    b. That the effective cause of fat loss is the capsule and not caloric restriction

---

* Senior District Judge of the Eastern District of Virginia, sitting by designation.

1. As pertinent, such statute reads:
   § 3005. False Representation; lotteries
   (a) Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representation, or is engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money or of real or personal property, by lottery, chance, or drawing of any kind, the Postal Service may issue an order which—
     (1) directs the postmaster of the post office at which mail arrives, addressed to such a person or to his representative, to return such mail to the sender appropriately marked as in violation of this section, if the person, or his representative, is first notified and given a reasonable opportunity to be present at the receiving post office to survey the mail before the postmaster returns the mail to the sender.

2. *United States Postal Service v. Peak Laboratories,* 389 F.Supp. 228 (N.D.Ga.1975).

3. Filed January 15, 1975; amended January 22, 1975.

(dieting) and/or caloric expenditure (exercising);

c. That the product will dissolve fat, i. e., "the fat dissolver";

d. That the lecithin in the product in the doses provided therein will cause a decrease of 30 per cent in the cholesterol level of the average person;

e. That use of the product will cause fat to be redistributed;

f. That the capsule will significantly contribute to the effectiveness of a conscientious diet program.

For purposes of 39 U.S.C. § 3005, the Postal Service need prove but one of the aforementioned representations to be false. At oral argument, counsel for the Postal Service told this Court that its strongest argument concerned alleged misrepresentation "d", concerning lecithin's effect in reducing cholesterol level by 30% in the average person, using the recommended dosage.

Peak admitted the use of the mails, admitted making all of the representations alleged to be false except "d", but denied that the representations were materially false.

The alleged offending language with regard to "d" in the advertisement reads:

Dr. Lester L. Morrison, in a recent project, found that Lecithin produced a decrease of as much as 30% in cholesterol of the body.

■ Peak denies that the above portion of their advertisement represented in substance and effect that the lecithin in the product, in the recommended doses, will cause a decrease of 30% in the cholesterol level of the average person. The Postal Service Judicial Officer interpreted the advertisement pursuant to the criteria delineated in *Donaldson v. Read Magazine,* 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948). *Donaldson* counsels that the advertisement is to be read in light of its effect on the ordinary mind. Thus, inclusion of "scientific results" for an ingredient of the product necessarily represents that the product that will be sent to the purchaser will have the same or similar results.

Peak argues that although the judicial officer correctly applied *Donaldson* to the issue of whether or not representation (d) was made, the judicial officer went far beyond the scope of *Donaldson* in erroneously applying such principle to the issue of the material falsity of the representation. We find no merit in this contention. We do not read *Donaldson* as so limited in its application, in view of the purpose of protecting the public. Any other reading of the case would subvert the instructive admonition of the Supreme Court in *Donaldson* at page 188, 68 S.Ct. at page 597 of that opinion:

Advertisements as a whole may be completely misleading, although every sentence separately considered is literally true. This is because things are omitted that should be said, or because advertisements are composed or purposely printed in such a way as to mislead.

■ The Court in *Donaldson* cited a number of decisions, some reaching back to the turn of the century. In *Wiser v. Lawler,* 189 U.S. 260, 23 S.Ct. 624, 47 L.Ed. 802 (1903), the Court, on appeal from the Supreme Court of the then Territory of Arizona, held that promoters of mining enterprises, in the preparation of prospectuses, were bound to consider the effect that would be produced upon an ordinary mind by the representations of the prospectuses. In addition, in estimating the probability of the public being misled, the Court held that a reviewing court could take into consideration not only the facts stated, but the facts suppressed. This line of reasoning is also evident in the latest decision cited by Mr. Justice Black in the *Donaldson* opinion, which was *Farley v. Simmons,* 69 App.D.C. 110, 99 F.2d 343 (1938). The Court in *Farley* held that an advertisement so worded that it does not make an express misrepresentation, but is artfully designed to mislead those responding to it, is subject to the mail fraud statutes. In light of the consist-

ent theme of the earlier cases, we read *Donaldson* as applicable to both whether a representation was made and whether a representation is substantially false, in light of its effect on the ordinary mind.

■ Putting the case in the most favorable light for the appellant, there is still clearly substantial evidence to support the judicial officer's finding that lecithin in the doses prescribed by the "Fat-Off" product will not reduce body cholesterol by as much as 30%. The only ingredient potentially affecting cholesterol is lecithin and its presence in the product is limited to an extent permitting, at most, 600 milligrams per day in dosage.

The Postal Service's expert, Dr. Segal, testified that a decrease in total body cholesterol of 30% might well be a terminal event in a human being, and that lecithin would not reduce cholesterol by 30%.

Peak's expert, Dr. Rudolph, testified that his only knowledge of 30% reduction in cholesterol was based upon studies performed in the 1950's. The patients involved had high blood cholesterol levels, and were taking other medicines and following nutritional programs. He had not seen any studies using daily quantities of 400 to 600 milligrams of lecithin but was of the opinion that it would have some eventual cumulative effect in the reduction of cholesterol.

Peak's next expert, Dr. Cooper, testified that he would not expect a person within the range of normalcy to drop his cholesterol level by 30% even taking two and one-half to five grams (2500 to 5000 milligrams) of lecithin, much less 600 milligrams, the recommended maximum daily dosage.

We think that the judicial officer correctly applied *Donaldson,* and that substantial evidence existed to prove that representation "d" was materially false.

We also hold that no error was committed in regard to burden of proof. Once the Postal Service presented a prima facie case of falsity, the burden of rebutting such shifted back to Peak.

AFFIRMED.

CLARK, Circuit Judge, concurring:

I concur in the judgment of the panel on the ground that Peak's claim that the use of "Fat Off" causes fat to be redistributed is materially false. Substantial evidence exists to support the district court's finding in this regard. I am unable to accept, however, the conclusion that substantial evidence exists to support the finding of material falsity in Peak's assertion that "Dr. Lester L. Morrison, in a recent project, found that Lecithin produced a decrease of as much as 30% in cholesterol in the body."

As the majority notes, the only evidence introduced by the Postal Service on this point was its expert medical witness's testimony that he was of the opinion that lecithin does not decrease the total body store of cholesterol by 30%. The witness also stated that while he had not checked Dr. Morrison's scientific references or professional qualifications, he knew of no report of a controlled, ethical evaluation which showed lecithin would consistently cause a 30% reduction of body cholesterol. No evidence was adduced, however, to establish that a Dr. Morrison was not qualified to perform the reported project, that he had not made such a test, that his findings were different from those set forth in the advertisement, that the test methods were known to or should have been known to produce inaccurate results, or that the test was conducted in an unscientific or unprofessional manner.

The typical shopper in 1977, who often marches into the market place armed with a current consumer report, would not be led astray by this assertion. One is hard pressed to find advertisements today that fail to extoll how well various products have fared in recent independent tests. This week I read that modest, inexpensive car X has been proven to ride 30% more quietly than expensive, Sybaritic car Y; that hospital tests show pill A will enter my bloodstream with its sweet, blessed relief 20% more quickly than pill B. The first advertisement could be read to say that anyone purchasing the cheaper car would

secure a better car. The second ad might be thought to say pill A is better than pill B, although B's counter-advertisement claims that its tests show there is no faster acting pain reliever on the market. I say the mind of the ordinary reader says maybe so and maybe no when it notes an advertiser report of favorable tests or studies. Although the Postal Service's expert could not be classed as an ordinary reader, he testified he would not expect such a result. I don't either. More importantly, I cannot accept that the quoted portion of the advertisement would leave an ordinary reader with the impression that a 30% reduction of his body cholesterol will necessarily result from taking "Fat Off."

To say that the Postal Service could stop all advertisements which report tests or studies from entering the mails by producing an expert witness who would do no more than express an opinion disagreeing with the reported results, would give it far too great a license to pick and choose what may be delivered through the mails. Most respectfully, I disagree with that portion of the majority's opinion here.