**SEAN MICHAELS, INC., Sara Michaels, Inc., Appellants,**

v.

**UNITED STATES POSTAL SERVICE.**

**No. 80–1254.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 27, 1981.

Decided April 21, 1981.

Jack Paller, Atlanta, Ga., of the bar of the Supreme Court of Georgia, pro hac vice by special leave of Court with whom Daniel N. Steven, Bethesda, Md., was on the brief, for appellants.

Robert C. Seldon, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and John Oliver Birch, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before MacKINNON and WALD, Circuit Judges and HAROLD H. GREENE *, United States District Judge for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

We are called upon in these consolidated cases to determine whether the Postal Service properly concluded that two companies breached the terms of consent agreements which prohibited them from making certain claims in the advertising of their products. One of the companies, Sean Michaels, Inc. (Sean Michaels), markets the "Sean Michaels Bust Expander," an "exercise device designed to improve and enhance the fe-

male user's bust features." Appellants' Brief at 4. The other, Sara Michaels, Inc. (Sara Michaels), markets the "Sara Michaels Protein for the Bust," a "food supplement designed to improve and enhance the female user's bust features through the process of excess caloric engorgement." *Id.*

## I. BACKGROUND

Each of the consent agreements prohibited the respective company from making representations that the Postal Service had determined were false after investigation and hearing. Sean Michaels was precluded from representing that its product (1) would increase the size of the female user's breasts, (2) would increase, on the average, the female user's bustline by 3½ inches in 14 days or 5 inches in 21 days,[1] (3) is a new invention that utilizes a principle called "pectoral isolation" and differs substantially from other so-called bust developers, and (4) would achieve these advertised results if the user exercises three minutes or less per day.

The Sara Michaels consent agreement prohibited that company from representing that its product (1) contains a unique combination of amino acids not readily available in an ordinary balanced diet, (2) would increase the female user's bustline by 3 to 4 inches in 2 to 3 weeks when used in conjunction with the daily, one-minute exercise program, (3) would cause the female user's breasts to become "larger, firmer and fuller" when used in conjunction with the exercise program, and (4) makes a material and substantial contribution to the claimed benefits.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. For the purposes of these cases it is important to distinguish between "breasts" and "bust" (or "bustline"). The dictionary defines breast as "either of two protuberant milk-producing glandular organs situated on the front of the chest or thorax in the human female." Webster's Third International Dictionary 273 (1961). Bust is defined as "a measure around the female body marking the maximum projection of the breasts." *Id.* at 303.

Unfortunately, appellants' advertising does not always highlight the distinction. As noted by the Postal Service administrative law judge in his Initial Decision on the falsity of Sean Michaels' representations,

Although the term "bustline" in the context of patterns for female garments means, as established by [Michaels'] evidence, the measurement around the body at the fullest part of the bust, high under the arm and straight across the back . . . ., in the context of [Michaels'] advertisements the term "bustline" is obviously designed to convey the meaning "breast."

Appendix (App.) at 26.

Both companies modified their advertising after entering into the consent agreements, but the Postal Service believed that the new advertising continued to include the representations proscribed by the agreements. As authorized by the agreements, the Service sought sanctions [2] from a Postal Service judicial officer. That officer found that both companies had violated their consent agreements and granted the sanctions. The companies filed a complaint in district court to review the administrative decision. The district court granted the Postal Service's motion for summary judgment.

## II. ANALYSIS

The question before the judicial officer was whether appellants violated the terms of the consent agreements, *see American Consumer, Inc. v. United States Postal Service*, 427 F.Supp. 589, 591 (E.D.Pa.1977), not whether the representations made in the later advertising were false. The district court concluded that the administrative decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." App. at 14. We affirm the district court, but wish to make clear that the consent agreements permit the appellants to represent certain things concerning their products.

### A. *Sean Michaels*

In its original determination of the falsity of Sean Michaels' representations, the Postal Service concluded that "the average female user of [Michaels'] product may experience some increase in roundness, height and firmness of her breasts." App. at 33.

Although Sean Michaels claims that this is the thrust of its new advertising, the judicial officer could have reasonably concluded that statements such as "I really got big in just 14 days," app. at 66, and "I just know my bustline increased like mad," *id.*, accompanied by "before and after" pictures implying substantial increases in breast size constituted a violation of the consent agreement. Also, an answer attributed to "Sean" in the advertisements to the question, "why does yours work for me while others didn't?"—"[b]ecause it uses a method we call pectoral isolation," app. at 65–66—continues to make the prohibited representation that the product "is a new invention that utilizes a principle called 'pectoral isolation' and differs substantially from other so-called bust developers." [3]

Were the breach of the consent agreement supported only by statements from Sean Michaels' advertising such as "I went from hopeless to fantastic in less than two weeks," app. at 66, and "I guess you could say with the Sean Michaels Bust Expander it's what's up front that counts," app. at 65, we may have a more difficult case, since no particular increase is mentioned. And, the statement, "My busts became rounder, firmer, fuller and had more lift," app. at 66, is probably outside the scope of representations prohibited by the consent agreement. Since the advertisements did contain representations violative of the agreement, however, we decide that the judicial officer's determination was proper.

### B. *Sara Michaels*

■ We also conclude that the judicial officer did not act arbitrarily or capriciously

---

**2.** The sanctions are those permitted by 39 U.S.C. § 3005, which allows the Postal Service, after finding that a person is conducting a scheme or device for obtaining money or property through the mail by means of false representations, to return to sender mail addressed to such person which relates to the scheme or device and to refuse to pay any postal note or money order drawn to the order of the person making false representations if the note or order is connected to the proscribed activity.

**3.** The judicial officer improperly included in the list of representations in the subsequent advertising which were outlawed by the consent

agreement the statement that "the Sean Michaels Bust Expander has been issued a patent from the U.S. Patent Office." App. at 186. The Sean Michaels consent agreement stated that the "Postal Service has not disputed the validity of Letters Patent issued by the United States Patent Office for the Sean Michaels device, and nothing herein shall preclude [Sean Michaels] from making a nondeceptive reference to such fact in its advertising." App. at 54. This does not affect the validity of the judicial officer's decision since he did list other representations that do offend the consent agreement.

in determining that the Sara Michaels consent agreement was breached. Like the Sean Michaels' advertisements, the Sara Michaels' advertisement includes a "before and after" picture that implies a significant increase in the size of the breast will result from the use of the product, app. at 261. We might hesitate to find that the accompanying statement, "In less than 15 days I went from tragic to terrific using the fantastic Sara Michaels Protein for the Bust," alone violates the consent agreement, but the advertisement also includes the statement, "I felt my breasts becoming firmer, fuller, and they had more lift." This violates the plain terms of the consent agreement. Furthermore, two paragraphs of the advertisement, which are set out in the margin,[4] support the judicial officer's determination that the new advertisement represents that the product contains a unique combination of amino acids not readily available in the ordinary diet.[5]

### III. CONCLUSION

The Sean Michaels consent agreement permits that company to represent that its product may increase the roundness, height and firmness of a female user's breast, but not that it will increase the size of the breast or significantly increase the bust in a short period. The Sara Michaels consent agreement permits that company to represent that excess caloric intake can increase the size of the female breast,[6] and that although excess caloric intake can be achieved through the use of Sara Michaels Protein for the Bust, it is in no way uniquely suited for that purpose. It cannot represent that its product will increase the bust significantly in a short period, or that it will cause the user's breasts to become "larger, firmer and fuller." Because the advertising of both appellants includes representations prohibited by the consent agreements, we affirm the district court's determination that the administrative decision was not arbitrary or capricious.

*Affirmed.*

---

4. Major experts report that protein, with the right combination of amino acids that assimilate easily, is important for the development of any part of the body. Further studies indicate that without the right supply of protein the muscles under the busts can actually become smaller.

    The problem with some protein is simply that it tastes awful. Not being one myself that takes too well to anything that tastes bad, I formulated the Protein so that it actually tastes like a milkshake.

App. at 261.

    Our list of statements from the Sara Michaels' and Sean Michaels' advertisements that breach the consent agreement is not meant to be exhaustive. Likewise, we have not attempted to list all of the statements in the advertising that do not breach the consent agreement.

5. We reject appellants' contention that the judicial officer could not determine whether the later advertising violated the consent agreements without some evidence of "how and in what manner women concerned with the appearance of their breasts viewed the advertisements." Appellants' Reply Brief at 4. Although "[w]hether [an] advertisement contains a false representation . . . is to be determined by its impact upon those to whom it is directed," *N. Van Dyne Advertising Agency, Inc. v. United States Postal Service*, 371 F.Supp. 1373, 1376 (S.D.N.Y.1974), that does not mean that the administrative agency is not "entitled to 'draw upon its own experience in order to determine (even) in the absence of consumer testimony, the natural and probable result of the use of advertising expressions.' " *Standard Oil Co. v. FTC*, 577 F.2d 653, 659 (9th Cir. 1978) (quoting *Carter Products, Inc. v. FTC*, 268 F.2d 461, 495 (9th Cir. 1959)). Especially here, where the judicial officer was deciding only whether certain advertising violated a consent agreement and not whether it was false, the absence of consumer testimony did not prevent the officer from finding a breach of the consent agreement.

6. The agreement stated that "[n]othing herein shall preclude [Michaels] from making truthful representations regarding the effect of excess caloric intake in increasing body dimensions including the size of the female breast." App. at 252.