DYNAQUEST CORP., et al., Appellants

v.

UNITED STATES POSTAL SERVICE.

No. 92–5165.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 13, 1993.

Decided Jan. 18, 1994.

Robert Ullman, argued the cause for appellants. With him on the briefs were Steven Shapiro and Max Kravitz.

Robert Shapiro, Asst. U.S. Atty., argued the cause for appellee. With him on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, John D. Bates and R. Craig Lawrence, Asst. U.S. Attys.

Before WILLIAMS, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Dissenting opinion filed by Circuit Judge WILLIAMS.

SENTELLE, Circuit Judge:

After an administrative hearing the Postal Service found that DynaQuest Corporation had engaged in a scheme to obtain money or property through the mails by means of false representations, in violation of the Postal Reorganization Act of 1970, 39 U.S.C. § 3005 (1988). The Service issued orders that enjoined further fraudulent mailings and prevented DynaQuest from receiving mail related to the scheme. DynaQuest brought suit in the district court to nullify the orders, but the court granted the Service's motion for summary judgment. DynaQuest now appeals.

We find substantial evidence in the record to support the orders and reject DynaQuest's claim of procedural error. We therefore affirm.

## I.

DynaQuest, an Ohio corporation, mails unsolicited advertisements that offer a program of training in the liquidation of excess merchandise. In exchange for an initial fee of $164, purchasers of the program receive a manual and cassette tapes that describe tech-

niques for locating and dealing in cut-price goods. The manual also describes supplemental goods and services that may be purchased as a package for $299 or separately for a total of $400: a book entitled "Where to Buy and Sell Merchandise" (price $80), a telephone consultation service (price $160 per annum), a self-administered examination for certification as a liquidator (price $70), and membership in the Association of Certified Liquidators (price $90).

The Postal Service brought an administrative complaint charging that DynaQuest, doing business under the name A.C.L., had "conduct[ed] a scheme or device for obtaining money or property through the mail by means of false representations" in violation of 39 U.S.C. § 3005 (1988). The complaint alleged that the mailings contained eleven false representations; after a hearing with full trial-type procedures the Associate Judicial Officer ("AJO") found for the Service on four of the charges and issued two orders. *See In re A.C.L.,* P.S. Docket No. 36190 (U.S. Postal Serv. Dec. 28, 1990). The first commanded DynaQuest and its agents to cease and desist from making the representations found false. The second charged the Postmaster at Columbus, Ohio to stop and return any mail addressed to DynaQuest and its agents except mail not related to the fraudulent scheme or mail that requests a refund or return of merchandise. DynaQuest moved for reconsideration, sought to reopen the hearings to introduce the testimony of two purported experts in the liquidation business, and requested that the Service release certain funds held in escrow. The AJO denied all the requests. *See In re A.C.L.,* Decision on Motion for Reconsideration, P.S. Docket No. 36190 (U.S. Postal Serv. May 15, 1991).

DynaQuest then brought an action in the district court under the Administrative Procedure Act. DynaQuest sought a declaratory judgment that the orders were not supported by substantial evidence and an injunction against enforcement of the orders. On cross-motions for summary judgment, the court issued an order that affirmed the AJO's decision on three of the four representations, vacated the fourth, and sustained the Service's orders. *DynaQuest Corp. v. Unit-*

*ed States Postal Serv.,* No. 91–1582, slip op. at 20 (D.D.C. Mar. 5, 1993).

Of the three representations that the court found fraudulent, DynaQuest claims that two are unsupported by substantial evidence, but does not challenge the third. DynaQuest also claims that the AJO's refusal to reopen the hearings amounted to an abuse of discretion.

## II.

39 U.S.C. § 3005 provides:

(a) Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations ... the Postal Service may issue [curative orders].

This section forbids representations that are false or artfully designed to mislead. *See Donaldson v. Read Magazine, Inc.,* 333 U.S. 178, 188, 68 S.Ct. 591, 597, 92 L.Ed. 628 (1948) (interpreting predecessor to § 3005). Whether the representation was made and whether it was false must both be decided in light of the effect of the suppressed material on ordinary minds. *See Peak Laboratories, Inc. v. United States Postal Serv.,* 556 F.2d 1387, 1390 (5th Cir.1977) (per curiam). Under § 706(2)(E) of the Administrative Procedure Act the Service's findings prevail if supported by substantial evidence, *see Silver v. United States Postal Serv.,* 951 F.2d 1033, 1042 (9th Cir.1991), by which is meant "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). As the district court's grant of summary judgment is subject to *de novo* review we will directly assess the administrative record.

### A.

■ The first representation at issue reads:

Respondents will assist purchasers of respondents' program to earn sums of money in the thousands of dollars without the need for purchasers to make any additional payments to respondents.

Postal Service Complaint at ¶ 10(d), *In re A.C.L.* (P.S. Docket No. 36190).

The AJO found that "[p]articipants in the program were not required to purchase the three supplemental services or book in order to act as a locator or liquidator for respondents" and that "[r]espondents did provide assistance to participants ... whether or not the participants purchased the supplemental services." *In re A.C.L.* (P.S. Docket No. 36190) at 10. But the AJO also found that "the perception created by the manual in regard to the supplemental services is that they are a necessary adjunct to the manual and should be purchased in order for a participant to successfully operate as a locator or liquidator." *Id.* at 10–11.

DynaQuest argues that the representation at issue was materially true. The testimony showed that use of the manual and tapes, without purchase of any supplemental services, brought success to at least a few customers. That greater success could be achieved with the supplements does not falsify the representation; after all many complete products are offered with the option to purchase some additional feature that makes the product even more desirable.

But DynaQuest did more than offer enhancements to a complete product. The manual induced customers to believe that purchase of the supplemental services was necessary to even minimally adequate exploitation of the product. The contradiction between that impression and the promises in the initial mailing makes the mailing misleading and thus a valid object of the administrative injunction. The mailing states that "[a]fter you locate an item ... you can contact our headquarters and we'll take it from there"; the manual, however, belies the promise by announcing that "you need to be certified in order to join the Association of Certified Liquidators and sell merchandise to us." The mailing announces that "it's extremely easy with our proven copyrighted system to make a FORTUNE in this business, right from your kitchen table and without any money from your own pocket!"; but the manual then declares that the book DynaQuest sells for $80 "is a **must** for anyone wanting to make a fortune in liquidat-

ing...." (emphasis in original). Other examples to the same effect need not be recited.

DynaQuest protests that it produced at least one witness who testified that she had achieved a degree of success before purchasing the supplemental services. *See* Joint Appendix at 249–56 (testimony of Janet Hunt). That some of the subjects of a misleading representation evade the harm produced by the deception is no excuse. "The decisive factor ... is not whether any one complains of fraud, or was in fact defrauded, but whether the mails are being used to project a [fraudulent] scheme." *Farley v. Heininger,* 105 F.2d 79, 84 (D.C.Cir.) (internal quotations omitted), *cert. denied,* 308 U.S. 587, 60 S.Ct. 110, 84 L.Ed. 491 (1939). That question turns on the effect of the representation on the mind of the ordinary subject, and in view of the Service's expertise in assessing that effect the AJO was entitled to conclude that the mailings would in fact mislead DynaQuest's customers. *See Sean Michaels, Inc. v. United States Postal Serv.,* 653 F.2d 591, 594 n. 5 (D.C.Cir.1981) (per curiam) (even in the absence of consumer testimony the Service may determine falsity by reference to the natural and probable results of advertising expressions).

Nor is it relevant that some customers occasionally obtained telephone consultation and other assistance even though they had not paid the price for those services announced in the manual. DynaQuest's stated policy was that the services must be bought and the testimony showed that in practice the policy was generally followed. We find substantial evidence to support the AJO's finding that the representation alleged in ¶ 10(d) is false.

**B.**

The second representation reads: Respondents will provide purchasers of the program with *comprehensive* training in the merchandise liquidation field.

Postal Service Complaint at ¶ 10(i) (emphasis added).

That the representation was actually made is manifest. The AJO found that the solicita-

tion implied that purchasers would receive, for the initial $164 purchase price, a manual and two cassettes that would provide comprehensive training. The solicitation states that "you can start the same day you receive our package." The package is described as an "exclusive copyrighted system" that "provides all the information you need to start MAKING BIG BUCKS!" Finally, the solicitation states that "[t]his money making program comes complete with a 3 ring binder crammed full of all the secrets you need, plus 2 cassette tapes so you can get going the same day." The AJO rightly found an implied promise of comprehensive training.

DynaQuest's principal argument is that the Service failed to carry its burden, imposed by the Administrative Procedure Act, of proving the falsity of the representation. *See* 5 U.S.C. § 556(d) (1988) (proponent of an order has the burden of proof). DynaQuest notes that in the district court the Service formally admitted the truth of paragraph 13 of DynaQuest's statement of material facts, which read as follows:

> In the administrative proceeding, the Postal Service offered no evidence, including no expert evidence, that the DynaQuest manual in and of itself (without reference to supplemental services) did not provide comprehensive training in the merchandise liquidation field.

The argument is little more than an ingenious play on words. The Service maintains that the representation of comprehensive training was false precisely because DynaQuest led purchasers to believe that, in return for the initial payment of $164, they would receive all the training DynaQuest had to give; whereas the manual and tapes in fact provided only a partial disclosure of DynaQuest's expertise in the field, and instead withheld valuable elements of training to be offered in the form of supplemental services. Thus it is true but irrelevant that

the Service introduced no evidence to show that the manual was not comprehensive "without reference to the supplemental services." The delayed offer of those services was part of the whole course of dealing against which the law judges the truth or falsity of the representation. *See, e.g., Donaldson,* 333 U.S. at 188–89, 68 S.Ct. at 597.

Taking the offer of supplemental services into account, the record contains substantial evidence to support the finding that the representation of comprehensive training was false. DynaQuest withheld desirable information and assistance to encourage purchase of the supplemental services. While the solicitation promised that the manual would itself contain "all the secrets you need," the manual offers a book, priced at $80, entitled "Where To Buy And Sell Your Merchandise." The manual states that the book contains "Secret Sources" for buying and selling and that "this book is a *must* for anyone wanting to make fortune in liquidating and turn deals very quickly." In the same vein the manual urged purchasers, for a annual fee of $160, to become a member of the "Association of Certified Liquidators"; the manual promised that DynaQuest would "share *additional secrets*" (emphasis in original) with those who joined the Association. Moreover members of the Association could enjoy business opportunities not available to other purchasers, such as arranged letters of credit and the chance to attend industry conventions. In all these respects DynaQuest broke its promise, implicit but fairly apparent, to give initial purchasers comprehensive training.[1]

DynaQuest complains that the Service introduced no evidence on the question of comprehensiveness other than the manual itself; and that without such extrinsic evidence the AJO could not reject the testimony of DynaQuest's witnesses, for the Service has no independent expertise in the field of mer-

---

1. It was suggested at oral argument that the AJO offended the requirement of fair notice by construing "training" to encompass the secrets and opportunities that DynaQuest withheld. Whatever the abstract meaning of the term, we think it plain that training in a particular field of commerce includes the provision of the knowledge and *savoir-faire* that can only be obtained through long experience of the business. More-

over DynaQuest can hardly claim unfair surprise if training is understood to include services that DynaQuest itself promotes as peculiarly suited to the novice. The manual, for example, touts DynaQuest's telephone consultation service by stating that the service is "very helpful and is highly recommended for the beginning liquidator. We can help you over any rough areas you may encounter."

chandise liquidation. The law, however, is that the Service may draw upon its expert understanding of ordinary consumers not only to decide whether a representation was made but also to determine whether the representation was false or misleading, *see Peak Laboratories, Inc.,* 556 F.2d at 1390, and indeed may do so even without consumer testimony. *See Sean Michaels,* 653 F.2d at 594 n. 5. In a different case the absence of such testimony might render the evidence of falsity inadequate, but here the manual supplies all the evidence that is needed. We affirm the AJO's conclusion that the representation in ¶ 10(i) of the Complaint was false.

### C.

■ DynaQuest argues that the AJO erred by refusing to reopen the evidence to allow DynaQuest to submit the testimony of two experts in the field of merchandise liquidation. The experts' affidavits showed that they would have testified that the DynaQuest program was comprehensive.

■ Refusal to reopen evidentiary hearings is a matter of agency discretion and will be sustained unless the discretion was abused. *See Cities of Campbell v. FERC,* 770 F.2d 1180, 1191 (D.C.Cir.1985). The AJO denied the motion because "[t]he evidence to be adduced is not newly discovered. Nor is there any other valid reason why it could not have been presented at the hearing." *In re A.C.L.,* Decision on Motion for Reconsideration at 3. DynaQuest argues that because, according to the admission described above, the Service introduced no evidence regarding the comprehensiveness of the manual, DynaQuest had no reason to think that expert testimony was needed on that issue until the AJO erroneously decided it against DynaQuest. The argument would be more persuasive had DynaQuest failed to advance *any* evidence of comprehensiveness; but as it purposely introduced lay testimony the decision not to produce experts appears simply as a decision, subsequently perceived as mistaken, that experts were unnecessary. Economy and finality require that parties bear the consequences of such decisions. We find no abuse of discretion in the refusal to reopen the hearings.

### D.

Having found no errors of substance or procedure in the Postal Service's proceedings against DynaQuest, we affirm the judgment of the district court.

*It is so ordered.*

STEPHEN F. WILLIAMS, Circuit Judge, dissenting:

DynaQuest Corporation and related appellants (collectively called "DynaQuest") are primarily in the business of liquidating what is called "distressed merchandise"—goods for which the immediate owner has little or no use or market. DynaQuest also has sold an instructional program, in the form of a manual entitled "Liquidate Your Way to a Fortune", as well as tapes, telling those who bought the program how to go about locating and then profitably disposing of distressed merchandise. In a sense, this recruited finders for its own business; among other ways of disposing of distressed merchandise, the manual explained to the reader/customer that he or she could use DynaQuest in liquidating merchandise by sending it specified items of information about the goods. In addition, DynaQuest used the manual itself to urge buyers to purchase various supplemental services and products. The most pertinent of these were the opportunities to bring DynaQuest in on the liquidation of specific merchandise by telephone rather than written correspondence, and to have DynaQuest purchase the goods for its own account rather than merely help the reader/customer to sell them. In some places in the manual DynaQuest described these supplementary items in what were surely extravagant terms—characterizing a book of likely purchasers of distressed merchandise, for example, as a "**must** for anyone wanting to make a fortune in liquidating and turn deals very quickly." See Joint Appendix ("J.A.") 199.

The Postal Service, however, in claiming that DynaQuest had "conduct[ed] a scheme or device for obtaining money or property

through the mails by means of false representations", in violation of 39 U.S.C. § 3005, did not charge that the *manual* overstated the benefits of the supplementary services. Rather, it rested on the theory that DynaQuest's *mailings* had touted the manual with false representations. Basically, its theory was that if the supplementary services were as great as the manual said they were, then the manual could not have been as great as the mailings said. There are two troubles with this view. First, as the Postal Service is required to prove the falsity of the statements that it points to as false, see, e.g., *Silver v. U.S. Postal Service*, 951 F.2d 1033, 1042 (9th Cir.1991), a mere demonstration of *contradiction* between two utterances of DynaQuest is not enough; it must show that the specific mailing claimed to be false was false. Second, carefully examined, DynaQuest's claims in the mailings turn out to have been "not literally false"; as the district court rightly noted, *DynaQuest Corp. v. United States Postal Serv.*, No. 91–1582, slip. op. at 8 (D.D.C. Mar. 6, 1992) ("*DynaQuest*"), J.A. 13, nor even false in substance. I turn now to the two specific charges.

## I. The first charge

The Postal Service alleges that DynaQuest falsely represented in its mail solicitation that it would

> assist purchasers of [its] program [i.e., a manual and two tapes for $149] to earn sums of money in the thousands of dollars without the need for purchasers to make any additional payments to [DynaQuest].

Postal Service Complaint 10(d), *In re A.C.L.*, P.S. Docket No. 36/90. J.A. 59. In finding that this was false, the Postal Service's adjudicator, the Associate Judicial Officer ("AJO"), acknowledged that "For the most part [the Postal Service] relie[d] upon [DynaQuest's] solicitation and program information to establish ... the existence of materially false representations." See *In re A.C.L.*, P.S. Docket No. 36/90 (U.S. Postal Serv., Dec. 28, 1990). J.A. 34. What proved the mail solicitation false, in the AJO's view, was that the manual induced the belief that the supplemental products were a "necessary adjunct" to successful participation. J.A. 38–

39. As I've already observed, the manual's hyping of the supplementary services does not in itself show that the mailings improperly touted the manual.

Nonetheless, since the mail solicitation represented a promise, and the manual was also by DynaQuest, it is not unreasonable to treat the manual as *evidence* that DynaQuest made a false promise, as DynaQuest knew of the manual's claims about the supplementary services at the time it made the mail solicitations. For two reasons, however, that analysis is insufficient to sustain the Postal Service's findings. First, the manual in fact conveys a rather mixed image of the need for the supplementary services. While it refers to the purchase of one of them as a "must", this bit of puffery—found in the description of the items at the *back* of the manual—is explicitly undermined by statements to the contrary in the manual itself. It states, for example, at page 9: "This manual is complete and contains everything you need to begin immediately. *Whether or not you choose to become certified and join the Association of Certified Liquidators,* you can 'sell' the merchandise that you've located through the Association, to our customers, who are ready buyers with CASH." J.A. 118 (emphasis added). And at page 3: "Throughout this manual, you will read about our Association for liquidators and other services. Let me tell you now, that these are only suggestions, and *you certainly need not join anything or make any other investment other than what you have made with this manual* in order to make this work for you. You can begin immediately." J.A. 114 (emphasis added). Indeed, the complained-of description of the supplemental items itself *starts* by saying that they are "*not required for you to perform as a liquidator.*" J.A. 198 (emphasis added).

Second, to the extent that there is an inconsistency between the solicitation and the statements in the back of the manual that the supplementary products are critical, it is the solicitation that is both literally and materially true. The AJO found that DynaQuest "did provide assistance to participants pertaining to the saleability of located merchandise and the location of purchasers of mer-

chandise *whether or not* the participants purchased the supplemental services." (emphasis added.) J.A. 32. And, he found, "Participants in the program were *not required* to purchase the three supplemental services or book in order to act as a locator or liquidator for Respondents." (emphasis added.) *Id.*

The evidence fully supports these findings. Once a participant established the existence of surplus merchandise, answered a list of questions, obtained a sample, and mailed these to DynaQuest, then DynaQuest would attempt to broker a deal, and, if successful, would send half of the profits to the locator. The AJO found that participants could contact DynaQuest by mail whether or not they purchased the telephone consulting service, J.A. 32, and that those "who locate[d] merchandise and refer[red] the matter to [DynaQuest] [were] paid 50% of the profits of the sale of the merchandise." J.A. 36. See J.A. 228–29 (testimony on deal going through and check arriving from DynaQuest after locator had lost interest); J.A. 251–52 (testimony on working with DynaQuest through the mail). Thus, the AJO quite properly rejected another Postal Service claim, a charge that DynaQuest had falsely represented that it "will share profits in liquidating merchandise with any addressee who purchases [DynaQuest's] program", Postal Service Complaint 10(e), affirmatively finding that DynaQuest's representation was true. J.A. 36.

The second component to this representation—that the DynaQuest help would assist purchasers in earning thousands of dollars—is also sustained by the record. As the AJO observed, DynaQuest "presented the testimony of participants who had made substantial sums of money", J.A. 35; there was no evidence to suggest that these participants had some magical attribute that enabled them to use the manual, and DynaQuest's assistance, in ways unavailable to other purchasers. Indeed, the AJO expressly found that "sums of money in the thousands of dollars have been earned within weeks by purchasers of [DynaQuest's] program." *Id.* In doing so, he also found that another representation claimed by the Postal Service to be false—that DynaQuest "will assist purchasers of [DynaQuest's] program in earning sums of money

in the thousands of dollars", Postal Service Complaint 10(c)—was in fact "not false". *Id.*

Thus, unrefuted evidence supported the truth of both elements of the first claimed misrepresentation.

The majority rests its affirmance on supposed contradictions that on close examination prove not to be such. The solicitation states that "After you locate an item . . . you can contact our headquarters and we'll take it from there", J.A. 67, and the majority finds this belied by the manual's statement that "you need to be certified in order to join the Association of Certified Liquidators and sell merchandise to us." Maj. Op. at 1147 (citing J.A. 199). In context, however, it is clear that these statements are not contradictory. The first involves a service by which the purchaser of the manual can locate surplus products and have DynaQuest liquidate them—a service DynaQuest did in fact provide—while the second involves the locator selling directly *to* DynaQuest.

The majority also notes a contrast between the solicitation's announcement that "it's extremely easy with our proven copyrighted system to make a FORTUNE in this business, right from your kitchen table and without any money from your own pocket!" and the manual's declaration "that the book DynaQuest sells for $80 is a *must* for anyone wanting to make a fortune in liquidating. . . ." *Id.* But these two quotations are not addressing the same issue. The first merely indicates that you can engage in the liquidation business without risking your own capital in the purchase of the located merchandise (i.e., by using the liquidation service provided by DynaQuest, or by lining up the ultimate buyer and seller directly). Other language in the solicitation confirms this understanding of the passage. It seeks to lure the reader who is "interested in a money making program that requires NO MONEY *to operate.*" (emphasis added.) J.A. 74. The manual also makes the same point, explaining how the reader embarks on a properly brokered deal with "no money out of [his] own pocket". J.A. 167. See also the manual at 139, 141 (J.A. 188–89) (discussing how a locator can broker a deal without risking his own capital); at 41 (J.A. 137) ("With our

system the buyer ends up paying"); at 5 (J.A. 116) ("There isn't the need for large financial risks."); and see J.A. 252 (purchaser-witness describes actual transaction, saying that he "didn't use any of [his] own money.")

As the district court put it: "The AJO's finding makes it clear. that if a person purchases the DynaQuest manual for $149, he may be able to make a substantial amount of money without spending any additional money to purchase DynaQuest's supplemental services." *DynaQuest,* slip. op. at 8 (J.A. 13). The district judge went on to conclude that DynaQuest's representation that it would assist purchasers in earning thousands was misleading, because once the manual arrived, it suggested that success was "much more probable" if the participant bought the supplementary services. *Id.* at 9. J.A. 14. Granted that the glow cast by the manual on the supplementary services may have tended to put the manual's own contribution in the shade, the record indicates that the manual and accompanying tapes did give the buyer the substance of what DynaQuest had said they would. There is no substantial evidence to the contrary.

## II. The second charge

The Postal Service. also alleges that Dyna-Quest falsely represented that it would

> provide purchasers .of the program with comprehensive training in the merchandise liquidation field.

Postal Service Complaint 10(i). J.A. 60. Although the DynaQuest solicitation does not explicitly state that the manual provides "comprehensive training", the Postal Service's recharacterization is not materially unfair. Claims that the manual "provides all the information you need to start MAKING BIG BUCKS!", J.A. 18, and will "show you how to do everything", J.A. 75, are clearly assertions that DynaQuest would impart enough information to enable purchasers of the program to engage in the business and make a lot of money.

The Postal Service quite rightly conceded that it had *no evidence* that the DynaQuest manual in and of itself (without reference to supplemental products) failed to provide

comprehensive training in the merchandise liquidation field. See Plaintiffs' Statement of Material Facts, ¶ 13 (J.A. 102), and the Postal Service's response, admitting ¶ 13 (J.A. 105). Nonetheless, the AJO asserted conclusorily, "The manual does not provide sufficient information for the ordinary purchaser to be able to successfully participate. The tapes are of the same nature." J.A. 39–40; see also J.A. 29. The AJO cited no evidence in support of this proposition other than to suggest that DynaQuest had "implicitly acknowledge[d] the deficiencies of their initial $149 program" "by offering for sale the supplemental services and book in a manner which clearly indicates their purchase is necessary if one is to have success in the liquidation business." J.A. 40.

There is no evidence in the record that DynaQuest did not fulfill its promise to provide "all the information you need to start MAKING BIG BUCKS!" Indeed, the evidence indicates without contradiction that the representation was not only literally, but materially true. This measure of comprehensiveness—the only kind of comprehensiveness that DynaQuest can properly be said to have warranted—is in effect the same as the second component of the first alleged misrepresentation, discussed above. As I noted there, the AJO observed that DynaQuest had "presented the testimony of participants who had made substantial sums of money", and he affirmatively found that "sums of money in the thousands of dollars have been earned within weeks by purchasers of [DynaQuest's] program." J.A. 35. The Postal Service never even argued that the circumstances of these participants were in any way exceptional.

In upholding the AJO's decision, the majority holds DynaQuest to a representation it never made: "DynaQuest led purchasers to believe that, in return for the initial payment of $164, [$149 plus $15 postage] they would receive *all* the training DynaQuest had to give; whereas the manual and tapes in fact provided only a partial disclosure of DynaQuest's expertise in the field, and instead withheld valuable elements of training to be offered in the form of supplemental services." Maj. Op. at 1148 (emphasis added). Dyna-

Quest never promised to impart *all of the expertise it held.* An offer of "comprehensive" training is not an offer to impart all of a teacher's expertise and experience. If a law school offers comprehensive legal training, no one supposes that to be a promise to transmit all of the faculty's knowledge. DynaQuest's partial disclosure of *its* body of knowledge simply does not speak to the issue of whether the training it supplied was adequate by the standard that DynaQuest's representation actually set—enough to make large sums of money. The record—and even the findings of the AJO—establish that it did just that.

\*    \*    \*

As several of the quotations show, DynaQuest indulged in a lot of capitalized words and repeated references to large sums of money, and played upon immature people's ardent hopes for quick and easy money. The style was tasteless, but the substance was not materially inaccurate. I believe the decision of the district court should be reversed and the Postal Service order vacated.