DIRECTORY PUBLISHING SERVICES,
INC., et al., Plaintiffs,

v.

Marvin RUNYON, et al., Defendants.

Civ. A. No. 94–0640 HHG.

United States District Court,
District of Columbia.

April 18, 1994.

Lawrence H. Schwartz, William C. Nicholson, Bayh, Connaughton, Fensterheim & Malone, Washington, DC, and Walter M. Henritze, Jr., and Frank J. Shannon III, Atlanta, GA, for plaintiffs.

Stacy M. Ludwig, Asst. U.S. Atty., Washington, DC, for defendants (Jennifer Y. Angelo and Daniel S. Bryant, Consumer Protection Law, U.S. Postal Service, of counsel).

*OPINION*

HAROLD H. GREENE, District Judge.

In this action, plaintiffs seek an order from the Court enjoining defendants from enforcing a Cease and Desist Order and several False Representation Orders issued by a postal service judicial officer pursuant to 39 U.S.C. § 3005.[1] After a hearing held on March 28, 1994, the Court issued a Temporary Restraining Order requiring the postal service merely to detain the mail covered by the False Representation Orders, as opposed to returning the mail to its senders, pending the Court's decision on plaintiffs' motion for a preliminary injunction. The parties subsequently agreed to extend the effect of the Court's Order through April 14, 1994, in order to allow the Court to consider the entire administrative record and the parties' written submissions, as well as to allow for a further hearing.

The case again came before the Court for a hearing on plaintiffs' motion for a preliminary injunction and defendants' motion for summary judgment on April 14, 1994. With the benefit of the parties' written submissions and oral arguments, and based upon the entire record in this case, the Court previously denied plaintiffs' motion for a preliminary injunction. Moreover, the Court concluded that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). This Opinion sets forth the bases for the Court's decision.[2]

## I

This proceeding has its genesis in a postal service complaint filed October 29, 1991, alleging that plaintiffs had violated 39 U.S.C. § 3005 by engaging in a scheme for obtaining money or property through the mail by means of false representations. The com-

---

1. The Cease and Desist Order forbids plaintiffs from making certain representations, discussed in detail below, in any materials that seek the remittance of money or property through the mail. The False Representation Orders authorize postmasters to return to senders mail sent to plaintiffs' specified addresses and to mark such mail "Returned To Sender Due To Adressee's Violation of Postal False Representation Law." However, the False Representation Orders do provide plaintiffs with 48 hours to examine any mail received for the addresses to determine whether it is unrelated to the allegedly false representations.

2. Because the Court has concluded that defendant is entitled to a decision on the merits, no detailed discussion of plaintiffs' request for a preliminary injunction is required.

plaint alleged that plaintiffs' mailings, which consisted of unsolicited promotions for business telephone listings in plaintiffs' upcoming "statewide" yellow pages, contained seven false representations.

On July 24, 1992, an administrative law judge ("ALJ") issued an opinion upholding the postal service as to five of the alleged false representations. On February 28, 1994, a postal service judicial officer issued the agencies' "final decision" upholding the decision of the ALJ with respect to four of the allegedly false representations as follows:

1. the addressee had previously authorized a business listing in plaintiffs' telephone directory;

2. plaintiffs are the publishers of the business phone directory or "yellow pages" customarily supplied to telephone subscribers in the recipient's area;

3. the area of distribution of plaintiffs' directories is the same as the one in which the recipient already has a listing; and

4. plaintiffs have previously published a directory.[3]

Accordingly, the judicial officer issued the Cease and Desist Order and False Representation Orders at issue.

Plaintiffs then commenced the instant action seeking this Court's review of the agency decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2), and a permanent injunction prohibiting the postal service from enforcing its orders. At bottom, plaintiffs claim (1) that they have been denied due process based upon procedural errors at the administrative level, and (2) that the agency decision is not supported by substantial evidence and is contrary to law.

## II

■ The Court rejects plaintiffs' argument that procedural errors have infected the ad-

ministrative decision in such a way as to deny them due process of law. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). A review of the administrative record satisfies the Court that this standard has been amply met in this case.

■ Plaintiffs' contention that lay testimonials were improperly admitted as evidence of the efficacy or quality of plaintiffs' product is incorrect. *See* 39 C.F.R. § 952.-18(f) (lay testimonials inadmissible as evidence of efficacy or quality of items sold through mails). The testimony of which plaintiffs complain dealt not with the efficacy of plaintiffs' product, but with the potential deception stemming from plaintiffs' solicitation of the product. In other words, the efficacy of the actual product is irrelevant if the reader of the solicitation is given the impression that the product is something other than what it actually is. *See also* part III A, *infra*.

■ Likewise, plaintiffs' contention that the proceedings were tainted by the admission of hearsay testimony is without merit. The use of hearsay testimony in administrative proceedings, where relevant and material, is widely accepted. *See Veg–Mix, Inc. v. U.S. Dept. of Agriculture*, 832 F.2d 601, 606 (D.C.Cir.1987); *Hoska v. U.S. Dept. of Army*, 677 F.2d 131, 138 (D.C.Cir.1982); *see also* 39 C.F.R. § 952.19(a). Thus, although some of the testimony of which plaintiff complains may be viewed as hearsay, the Court is satisfied that the evidence was properly admitted. Moreover, it is abundantly clear that this evidence was not essential to the findings of the ALJ and Judicial Officer.[4]

---

3. The postal service does not allege that these are direct quotes from plaintiffs' solicitations. Instead, they represent only allegations made by the postal service regarding the representations implicit in the solicitations, as viewed by its ordinary recipients.

4. The Court also rejects plaintiffs' insinuation of a sinister motive behind the failure to testify of Tracy Bejarano. It is clear that witness Brian Holmes was qualified by first hand knowledge to testify at the hearing and that the testimony of Ms. Bejarano, his employee, would have been essentially cumulative.

■ Finally, the Court rejects plaintiffs' claim that defendants should not have been allowed to amend the administrative complaint at the hearing. Postal service regulations provide that:

> a party may move to amend a pleading at any time prior to the close of the hearing and, provided that the amendment is reasonably within the scope of the proceeding initiated by the complaint, the presiding officer shall make such ruling on the motion as he deems to be fair and equitable to the parties.

39 C.F.R. § 952.12(b).

The postal service complied with this procedure by orally moving to amend the complaint to name additional related parties and addresses. The amendments were unquestionably within the scope of the proceedings—adding no new substantive allegations. Plaintiffs do not contest that they were doing business under the additional names and addresses. Thus, it is patently obvious that this amendment resulted in no substantive change in the charges in the complaint and resulted in no prejudice. The presiding officer acted within his discretion in allowing the amendment.

### III

■ Having rejected plaintiffs' claims of procedural error, it remains the duty of the Court to review the administrative record as a whole to determine if the decision of the postal service is supported by substantial evidence. *Dynaquest Corp. v. U.S. Postal Service,* 12 F.3d 1144, 1145 (D.C.Cir.1994); *American Testing Institute v. U.S. Postal Service,* 579 F.Supp. 1345, 1349 (D.D.C.1984) (*court's review confined to determination of whether, based on record as a whole, there is substantial evidence to support the agency's factual findings and whether errors of law have been committed*). "Substantial evidence," in this context, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Dynaquest Corp. v. U.S. Postal Service, supra,* 12 F.3d at 1146. Thus, even if a court might reach a conclusion inconsistent with or contrary to that of the agency were the Court making the initial determination, the agency decision must be upheld if supported by adequate evidence. *See Illinois C.R.R. Co. v. Norfolk & W.R.R. Co.,* 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966).

Applying this deferential standard of review in this case, the Court concludes that the final decision of the postal service is supported by substantial evidence in the administrative record as a whole and that the Cease and Desist and False Representation Orders must stand. Therefore, the Court will only briefly address each of the allegedly false representations upheld by the Judicial Officer.[5]

A. The Addressee Had Previously Authorized A Business Listing In Plaintiffs' Telephone Directory.

Although it is impossible to point to one isolated statement in the solicitation or other single piece of evidence in the record that supports the conclusion that this misrepresentation was made, the Court is satisfied that the record as a whole contains such evidence that a reasonable mind might accept as adequate. Foremost in this regard is the solicitation itself, which contains a number of factors that, in the aggregate, could be viewed as resulting in this misrepresentation. These include use of the familiar "Yellow Pages" term and walking fingers logo, which are used by other publishers with which recipients may have had prior listings, the offer of a free "white pages" listing, which is common in many other publications, the notation of a "record no.," which could be construed as evidence of an existing account with the

5. Although the Court agrees that each of the four allegedly false representations is supported by substantial evidence in the record, the Court notes that a decision upholding any one of the four would preclude the injunctive relief that plaintiff seeks with respect to the False Representation Orders because any one of the four, even standing alone, would be material. In other words, whether the solicitation in question contained one or four false representations is ultimately irrelevant because the postal service would be justified in enforcing the False Representation Orders in any event.

solicitor, and the use of terms such as "next listing" and "in the forthcoming edition," which could be construed as evidence that the solicited listing is merely a renewal of a prior listing.[6] Although none of these factors, standing alone, make an explicit misrepresentation, the postal service's determination is appropriately based upon the solicitation as a whole.

■ Plaintiffs find numerous errors in the approach and conclusion of the ALJ and Judicial Officer in the administrative proceedings. First, plaintiffs contend that far too much reliance was placed on the ALJ's own interpretation of the solicitation, without any expert testimony as to the solicitation's effect on its readers. It is clear, however, that the postal service, and consequently the ALJ, is entitled to draw upon its own expert understanding of the impact of the solicitation on consumers. This is true both as to determining whether a representation was made as well as whether the representation was false or misleading. *Dynaquest Corp. v. U.S. Postal Service, supra,* 12 F.3d at 1149. Moreover, the ALJ's consideration of the solicitation was not made in a vacuum, but instead considered the solicitation along with the testimonial and other evidence in the record.

■ Plaintiffs also argue that the ALJ erred in applying the "ordinary reader" standard to the solicitation which was, after all, targeted at businesspersons. Plaintiffs again miss the mark. The administrative decisions clearly recognize that the targets were businesses. However, we are not here necessarily dealing with IBM and Exxon. Instead, the recipients included businesses both large and small. Plaintiffs unquestionably understood that their solicitations would be received and scrutinized not only by lawyers and accountants, but would also be received by small merchants, restaurant owners, mechanics, etc.—those potentially less accustomed to the need to "read between the lines." As our Court of Appeals has stated, the "question turns on the effect of the rep-

resentation on the mind of the ordinary subject...." *Id.* at 1147. The record amply supports the conclusion that the ALJ was aware of the "ordinary subject" of the solicitation and made his determination with such subjects in mind.

■ Finally, and probably most importantly in the view of plaintiffs, it is argued that the ALJ erred in considering the use of the term "Yellow Pages" and the walking fingers logo in the solicitation. This error is patent, plaintiffs claim, because both the words and the logo are "generic terms" which are dedicated to the public domain and may be used by anyone.[7] Therefore, it is argued that by considering plaintiffs' use of these generic terms in the solicitation, the postal service and ALJ are wrongfully preventing plaintiffs from using the generic terms.

Once again, however, plaintiffs' argument proves too much. The record and administrative decisions again amply demonstrate that the ALJ and Judicial Officer understood the implications stemming from the use of the generic terms. It is equally clear that it is not the use of the terms themselves that has been prohibited. Instead, it is the net impression of the solicitation, including the use of the generic terms, that is dispositive. Although the use of the term and logo did figure prominently in the conclusions of the ALJ and Judicial Officer, as noted above, this was not the only factor.

Notwithstanding plaintiffs' protests to the contrary, the record, as well as common sense and everyday experience, supports the proposition that the term "Yellow Pages" may acquire a more specific meaning in the minds of many of those solicited. It does not follow, of course, that this meaning is restricted to only the "big players" such as the Bell Regional Operating Companies and AT & T, as plaintiffs would have the Court believe. Instead, it is reasonable to conclude that the common understanding is of a directory of a local nature, regardless of the pub-

---

6. Of course, there was also substantial testimonial evidence supporting the conclusion of the ALJ regarding the effect of the solicitation on its readers.

7. "Generic terms" are those that refer to a kind of product as opposed to a specific brand. *See, e.g., Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986).

lisher, to which those within a community can turn to locate services and products within reasonable geographic proximity. Upon even a cursory review of plaintiffs' "state-wide" directories it becomes obvious that this is a different animal entirely. Thus, although plaintiffs are not precluded from using the term "Yellow Pages" and the walking fingers logo, their solicitation as a whole must not give the impression that the product is something other than what it is.

Without belaboring the point of why plaintiffs' use of the generic terms in the instant solicitation, although not forbidden, may contribute to the overall misrepresentation, the following hypothetical example may be helpful.

Plaintiffs have cited the Court to *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986), in which it was noted: "Imagine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words...." The Court agrees, of course, that such a prohibition would indeed by quite improper and unfair.

However, we might consider instead the prominent and repeated use of the word "automobile" in an advertisement for a recreational go-cart. Although such a vehicle might, in a technical sense, qualify as an automobile,[8] it is hardly what most recipients of such an advertisement would describe as an "automobile." Thus, although the promoter of the go-cart might indeed be entitled to use the generic term, it is nevertheless the promoter's obligation to present the advertisement as a whole in such a way as to make it clear that the product is not a full-sized, road-safe, multiple-passenger-carrying "automobile." Likewise, it is the obligation of plaintiffs' in the instant case to distinguish its product from those commonly associated with the "Yellow Pages" term and walking

fingers logo by the advertisement's recipient.[9]

**B. Plaintiffs Are The Publishers Of The Business Phone Directory Or "Yellow Pages" Customarily Supplied To Telephone Subscribers In The Recipient's Area.**

This conclusion is supported by essentially the same factors as described above. Among these, the use of the term "Yellow Pages" and the walking fingers logo are most prominent. Unrefuted witness testimony exists on this very point.

**C. The Area Of Distribution Of Plaintiffs' Directories Is The Same As The One In Which The Recipient Already Has A Listing.**

Here again, the representation is supported by essentially the same factors. Although the Court finds that this conclusion is the weakest when considering only the solicitation itself, the record as a whole sufficiently supports the conclusion—particularly when considering the misrepresentations already found. That is, if a recipient believes that the solicitation is for the yellow pages in which it currently has a listing and is the yellow pages customarily supplied to telephone subscribers in the recipient's business area, this representation would follow. The testimonial evidence cited by defendant also provides substantial evidence in support of this conclusion.

**D. Plaintiffs Have Previously Published A Directory.**

This representation is the one most adequately supported by reference to the solicitation itself, with no further review of the record necessary. The use of terms such as "next edition" and "forthcoming edition" as well as the representation that the directory "is published and distributed annually," as opposed to "will be published and distributed

---

8. It is, after all, a four-wheel vehicle propelled by an internal-combustion engine using a volatile fuel. *See* Webster's *Collegiate Dictionary* 118 (9th ed. 1988).

9. Of course, it is additionally the obligation of the promoter in the Court's hypothetical not to give

the impression that its go-cart is in fact a Chevrolet, Ford, Chrysler or Volvo, just as it is the obligation of the plaintiffs in the instant action not to give the impression that its yellow pages are published by a Regional Operating Company, AT & T or Donnelley.

annually," give the unmistakable impression that the directory has been previously published. It is undisputed that this was not the case in many instances. This representation also follows from those previously found.

## IV

As is often the case in actions seeking the review of administrative findings, the Court might well take a slightly different or even contrary view if it were its responsibility to make the initial findings of fact and conclusions of law. That is, of course, not its function. Instead the Court must review the record for substantial evidence supporting the administrative conclusions. In this case, such evidence exists.

The Court has previously issued an Order on April 14, 1994, consistent with the foregoing.